T. A. LEWIS, Administrator, with the will annexed, of ROBERT LUSK, *v.* MARTHA LUSK.

1. SLAVERY: BEQUEST OF EMANCIPATION: AMERICAN COLONIZATION SOCIETY.—
The decision of this court, in *Lusk* v. *Lewis et al.* 32 Miss. R. 297, holding that the American Colonization Society is incapable of taking a bequest of slaves in this State, and that such bequests are absolutely void and go to the heir, cited and reaffirmed.

2. SAME: WILL: VALID BEQUEST INEFFECTUAL IF MADE TO DEPEND ON ILLEGAL BEQUEST: CASE IN JUDGMENT.—The testator bequeathed his slaves, after the death of his wife and mother, to trustees, in trust for the American Colonization Society. He also made a like bequest of a sum of money, "to be paid as soon as practicable after the foregoing bequest of slaves to them shall take effect." *Held*, that the payment of the pecuniary bequest is made to depend upon the bequest of the slaves taking effect; and, as this latter bequest is void, and can never take effect, the pecuniary legacy is also void. See *Lusk* v. *Lewis et al.* 32 Miss. R. 297.

3. WILL: DEPENDENT BEQUESTS: CASE IN JUDGMENT.—The testator directed all his property, except his slaves, to be sold, and out of the proceeds, that $3500 should be paid to trustees for the American Colonization Society, as soon as practicable after a bequest of his slaves to the said trustees should take effect, and "the balance undisposed of," he directed "to be equally divided between the Board of Education, and the Board of Domestic Missions of the Old School Presbyterian Church." *Held*, that the invalidity of the bequest to the American Colonization Society, did not affect the bequest to the two Boards of the Presbyterian Church, as the latter was in no wise dependent upon, or connected with the former.

4. SAME: WHAT RESIDUARY LEGATEE TAKES.—The residuary legatee takes whatever, by lapse, invalid disposition, or other casualty, falls into the residuum; but by the express terms of the Act of 1842 bequests of slaves for emancipation go to the heirs-at-law of the testator, in the same manner as if such testator had died intestate.

APPEAL from the Probate Court of Yallabusha county. Hon. T. A. Cheves, judge.

VOL. VI.—26

*George S. Yerger*, for appellants.

1. By the law of Maryland, where the Colonization Society was chartered, the society has the right to hold property of all kinds; the charter expressly gives this right; and such is also the rule at common law. Angel & Ames on Corp. 118; *Binney's Case*, 2 Bland. Rep. 118; 2 Maryland R. 120.

2. A corporation chartered in one State, may contract, hold, and receive, property in another State, unless repugnant to the laws or policy of the latter. 8 N. H. R. 31; *Bank of Augusta* v. *Earle*, 13 Pet. 520; *Burbank* v. *Whitney*, 24 Pick. 146.

3. The bequest of the slaves here, is to the trustees of the Colonization Society, absolutely; there is no express trust on the face of the will, and the legatees have denied that there is a secret trust to emancipate. It is true the trustees may emancipate them; this power results from the rights and powers of ownership; it may even be probable that they will; but they are under no obligation, legal or moral, to do so, and have made no promise to emancipate. It will not do to argue, that because they will probably emancipate the slaves, that the bequest to them is void; for it will not be denied, that the testator might lawfully have devised the slaves to any person residing in the non-slaveholding States, whose opinions are notoriously adverse to the institution of slavery, although it might be highly probable, almost certain, that such devisee would emancipate them; and there can be no difference between a bequest to such a person, and the bequest in this case, unless it be shown that the corporation is incapable of holding slaves, except for emancipation; and it has been shown that it may hold all kinds of property absolutely.

The bequest, then, cannot be adjudged void, unless the intent to have these slaves emancipated, appear on the face of the will; it cannot be conjectured. 3 T. R. 86; 2 Maule & Selwyn, 454; 3 Ib. 31; 13 Ves. 108; 1 Wend. 104.

But, 4. Suppose the intention was apparent on the face of the will, that the trust was held for the Colonization Society to colonize and send off the slaves. In such a case, the trust or condition would be void, but the devise to the trustees would be absolute.

The Act of 1842, where there is a direct bequest of emancipation to the slaves, or a direction for the executor to free them, and

send them out of the State, declares it void, and vests the slaves in the heirs-at-law. But that act leaves the law where it was before, where the devise is to a trustee; the trustee, in such case, takes. *Weathersby* v. *Weathersby*, 13 Sm. & Mar. 685; *Barksdale* v. *Elam*, 1 George, 697; *Poor* v. *Meal*, 6 Maddox, 28.

The case in 1 George, 310, was where there was no devise to a trustee, and this was the distinction taken by counsel in argument.

The above cases settle this. This point was not before the court, when the case was before them on demurrer.

5. But in regard to the $3500, it is absolutely given — the time of payment is postponed. This legacy is not given on a condition — it is vested; and if the time of payment is fixed after an impossible or illegal act is to be done, it is payable immediately, or at the time fixed, as if it were legal. 1 Jarman on Wills, 757–759–760, and notes; 1 Roper, 376, 507. *Squares* v. *Vaughan*, 2 Bro. Par. Cases, 254, cited above, is direct upon this point; see also *Newport* v. *Cook*, 2 Ashmead, 332.

So in case of a devise of a residue, where the payment is upon an uncertain event, it is vested. *Booth* v. *Booth*, 4 Vesey, 399; 1 Jarman, 767, &c.

In the case of a gift to be paid at marriage, or other uncertain event, if it be a condition at all, it is a condition subsequent, not precedent, as the above case proves.

6. But in cases of precedent conditions, if they were *malum in se*, both the gift and the condition, by the civil and common law, is void. But when the condition is precedent, and is illegal, because contrary to a statute or policy, &c., the condition is void, and the bequest is good. This is the rule of the civil law, as to personal bequests, and is the rule adopted in equity. 1 Roper, 507, and cases cited; *Brown* v. *Peek*, 1 Eden, 143; *Poor* v. *Meal*, 6 Madd. 28; and case in 13 Smedes & Mar., and 1 George Rep.

7. But, can there be any doubt that, by the 5th and 7th clauses, all the property, except slaves, was to be sold at the time when the devise to the American Colonization Society was to take effect? And if the Colonization Society cannot take, the Board of Missions and Board of Education will take.

The gift of a residue passes everything not effectually disposed of, as lapsed devises, illegal devises, &c. *Johnston* v. *Johnston*, 3

Iredell Eq. 427 ; *Taylor* v. *Lucas*, 4 Hawk. 215 ; 1 Richardson Ch. Rep. 465 ; *Vick* v. *McDaniel*, 3 Howard, 337 ; *Hamberlin* v. *Terry*, 1 Sm. & Mar. Ch. 589.

*Watson* and *Craft*, on same side.

The widow of the testator having renounced his will, to that extent, his will must fail ; but, with this exception, it is submitted, that the first, second, third, fourth, and fifth paragraphs thereof, are unquestionably legal, and should be sustained.

The trust created by the fifth paragraph should be upheld and executed ; in all of its features it is consistent with the rules of law.

The bequest of the slaves, in trust for the American Colonization Society, contained in the sixth paragraph of the will, should also be sustained.

The opinion heretofore given by this court on this subject, was in a case in which the trust for emancipation, alleged in the petition, was admitted, the case having gone off on demurrer to the petition ; and moreover, in that case, it was only competent for this court to affirm the decree below dismissing the petition.

At common law, every corporation had capacity to acquire and sell personal property, unless restrained by its charter. 1 Sandford's Ch. Rep. 280. The charter of the American Colonization Society confers this power, in express terms, on the corporation. See copy in the record, 19 Ala. R. 814 ; 24 Pick. 146 ; 4 Metcalf, 378 ; 7 Met. 188 ; 7 S. & M. 663–694.

The ability to bequeath all of his property by last will and testament, is conferred upon the owner, in general terms, by the laws of this State. Hutch. 649, sec. 14.

It is most manifest, that if this bequest is illegal, it is only rendered so by the act of the legislature passed in 1842, in these words :—

" Hereafter, it shall not be lawful for any person, by last will or testament, to make any devise or bequest of any slave or slaves, for the purpose of emancipation, or to direct that any slave or slaves shall be removed from this State, for the purpose of emancipation elsewhere."

What follows of this statute, declaring void secret trusts for the

purpose of emancipation, has reference alone to wills probated prior to the passage of the act. The clause providing for the descent and distribution of all slaves bequeathed, in violation of the act, is of general application.

Now, if there is a trust connected with the bequest under consideration, it is a secret one; and there is no law declaring that the effect of such secret trust shall be to make void the bequest. Nor will any court, in the absence of an express statutory direction, in any way or to any extent, recognize an illegal secret trust, for the purpose of invalidating a vested legal title, or even an equitable estate or interest. This principle is affirmed in numerous decisions. 3 Strobhart Eq. Rep. 225; 13 S. & M. 685; 1 George, 694. By the law, found in the new Revised Code, 236, sec. 3, art. 9, this principle, as to slaves conveyed or bequeathed, is probably changed. This act is much more comprehensive than that of 1842; but this act only operates prospectively. If this view of the law be correct, it is most manifest that the American Colonization Society takes the slaves bequeathed to it in the premises, free from any and all trusts whatever. In what way, or by whom, could the society be restrained or prevented from selling these slaves, and leaving them in slavery in Mississippi, or elsewhere, at its pleasure?

The title of the society, then, to these slaves, being vested by the will, it is insisted that this title is indefeasible and absolute, and that they are held by the society, as any natural person would hold them.

Under the Act of 1842, and the decisions above referred to, in 13 S. & M. and 1 George, it will scarcely be contended, that a bequest of slaves to a natural person, on a secret trust to emancipate them, would be held void; and it is submitted, that there is no difference, in principle, between such a bequest and the one under consideration.

Moreover, in the present case, there is no proof that the bequest of the slaves was made for the purpose of emancipation at all. The allegation of the petition to this effect, is expressly denied by the answer of the trustees, and there is no testimony contradicting this answer.

Nor is this illegal purpose of emancipation to be implied from

the charter of the American Colonization Society, or the objects contemplated by it.   This society makes no war on the institution of slavery.   It has, indeed, under its charter, no power to emancipate slaves bequeathed to it, as property.   Its resources, whether consisting of money or property, are dedicated to one object, and that object is, the colonization, with their own consent, of free persons of color of the United States.   On this subject, the language of the charter is, that its resources are to be employed for the one object, and for " no other uses or purposes whatever."

The society certainly has the legal right and power to sell these slaves, and in this way to raise funds to be employed in carrying forward its legitimate work, " the colonizing, with their own consent, in Africa, of the free people of color residing in the United States;" and possessing this power, the question arises, will this court pronounce void the bequest, upon the presumption that it was intended by the testator that both the law of the State, and the charter of the society, should be violated, in carrying out his secret wishes.   Full effect can be given to this will, consistently with the laws of the State; and the will should certainly not be defeated, upon a mere suspicion that something illegal was intended by it.   It should be remembered, that the free colored population of the United States is little less than a nuisance, and that its removal from the slave States is an object that greatly commends itself to all slaveholders.   It is not against, but in strict accordance with, the recognized and cherished policy of all of the slave States, to remove their free colored population beyond their limits.   Virginia actually made a large appropriation, a few years since, in aid of the cause of the Colonization Society, and it is among the abolitionists that the society encounters the strongest opposition.

Suppose the testator had bequeathed his slaves to Hale, or Giddings; could not such legatee have successfully asserted his title under the will, and, as the owner of the property, would not he have been protected in his dominion over it, as fully as any citizen of this State?

But, whether the bequest of the slaves be sustained, or be held void, the devise and bequest of the residue of the estate, both real and personal, is clearly legal and valid.

The seventh paragraph of the will is in these words:—

" At the death of my wife and mother, should they both not die during my lifetime, or at the time of my own death, should I survive them, I give and bequeath, in fee simple, to John H. B. Latrobe, Rev. William McLean, and W. W. Seaton, Esq., in trust for the American Colonization Society, all the slaves belonging to my estate, except such as it may be necessary to have supported, in pursuance of the sixth clause of this will."

The eighth paragraph, so far as material to our present inquiry, is as follows :—

" All the property, both real and personal, which may belong to my estate, exclusive of slaves, at the time when the foregoing bequest to John H. B. Latrobe, Rev. William McLean, and W. W. Seaton, Esq., in trust for the American Colonization Society, is to take effect, I direct shall be sold . . . . The proceeds of what may be thus sold, and all funds not otherwise disposed of, belonging to my estate, I will and bequeath as follows :—

" To John H. B. Latrobe, Rev. William McLean, and W. W. Seaton, Esq., I give and bequeath, in trust for the American Colonization Society, the sum of three thousand five hundred dollars, to be paid as soon as practicable, after the foregoing bequest of slaves to them in trust shall take effect. The balance, undisposed of, I direct to be divided equally between the Board of Education, and the Board of Domestic Missions of the Old School Presbyterian Church, in the United States of America."

Now, in the above and preceding paragraphs, " the time when the bequest" of the slaves " is to take effect," is simply referred to, as a mode of designating when the sale of the balance of the testator's property was to be made. The direction to make the sale is absolute and unconditional; it is to be made, not when, or on condition, that the bequest of the slaves takes effect, but at the time when it is to take effect; that is, at the time fixed by the testator himself for it to take effect. When this time comes, which is at the death of his wife and mother, the sale must be made, whether the bequest of the slaves takes effect or not, or the will of the testator will be defeated, as to a matter consistent with law.

The will peremptorily directs the sale of the testator's real estate ; and lands directed to be sold, are regarded, in equity, as converted into money, even before the sale is made. 13 B. Monroe, 537 ; 9 S. & M. 247, 282.

The bequest of $3500 to the Colonization Society, is not dependent or conditional, but peremptory and absolute.

This legacy is to be paid out of the residuum of the estate, exclusive of slaves; and the direction of the will is, that it is to be paid "as soon as practicable, after the bequest of the slaves takes effect." This bequest is surely an absolute, unconditional, and peremptory one; and the direction above, as to its payment, is not annexed to the substance of the gift, as a condition precedent, but only to its payment. It is not made to take effect, in the event, or on condition, that the bequest of the slaves takes effect; nor is it in anywise connected with, nor does it, in any way, grow out of the bequest of the slaves. It is not made with reference to any peculiar object, or for any specified purpose, but generally, without the slightest explanation of the motive by which it was prompted, of the design of the testator in making it, or of his wishes or intention as to the use or purpose to which it was to be appropriated. This bequest, then, is not dependent upon, subsidiary to, or inseparable from, the bequest of the slaves, and is not therefore affected by it, be it—the bequest of the slaves—legal or illegal.   5 Paige, 173, 197, 233; 9 Paige, 109, 117; 22 Wendell, 483; 1 Jarman on Wills, 205.

Looking to the will generally, it is apparent, that it was only to hasten its payment, that the testator directed this particular legacy to be paid, as soon as practicable after the bequest of the slaves should take effect.   And surely, what was intended to hasten a payment, should not be made wholly to defeat it; the shield designed to protect and to benefit, should not be converted, by construction, into a deadly spear.

The time fixed by the testator for the bequest of his slaves to take effect, is "at the death of (his) my wife and mother." When, therefore, he says, that the bequest he makes to the Colonization Society, of the sum of $3500, is to be paid, as soon as practicable after the said bequest of slaves shall take effect, he simply means, or directs, that the said payment be made as soon as practicable, after the death of his wife and mother.   See 2 J. J. Marshall, 340, 351; Meigs, 299; 1 Cushing, 134; 9 Watts, 403.   ·

But, even conceding that this pecuniary legacy, as well as the bequest of slaves to the Colonization Society, is void, for illegality,

still the bequests to the Board of Education, and Board of Domestic Missions, are unexceptionable and legal.

These boards are the residuary legatees, of the proceeds of all the property directed by the will to be sold, and all funds, not otherwise disposed of by the will. After making the bequest of the $3500, out of the said funds, the will proceeds: "The balance undisposed of, I direct to be equally divided between the Board of Education, and the Board of Domestic Missions," &c. See generally the eighth clause of the will.

The foregoing, it is admitted, is not a general residuary clause. The balance spoken of, is clearly defined by the will, to be the surplus left, after paying the bequest of $3500, out of the proceeds of the sale directed, and all other funds belonging to the estate, not previously disposed of.

The rule governing this subject, and which, it is submitted, will sustain the bequests to the said boards, is thus stated in the books: "Where a will contains distinct provisions, some of which are illegal and others legal, the latter will stand, except where they are so dependent upon each other that they cannot be separated." 5 Paige, 173; 9 Paige, 109; 22 Wendell, 483.

The bequest to these boards are not founded upon, and do not derive their purpose and object from, the bequests to the Colonization Society. 1 Jarman on Wills, 205. The proceeds of the sale for which the will provides, and all other funds, not otherwise disposed of, are devised and bequeathed, not originally, nor primarily, for the payment of the $3500 to the Colonization Society, but, primarily and substantively, for the payment of the bequests to the said boards, as well as for the payment of the said $3500. See the opinion of Judge Sharkey, in the case of *Mahorner* v. *Hooe*, 9 S. & M. 280–282. On page 282, Judge Sharkey, in speaking of certain bequests, one or more of which were illegal, whilst the residuary legacies, given out of the same fund, were legal, says: "The language of the will justifies the construction, that the sale was directed, with a view in part to a division of the proceeds between the residuary legatees of that fund. If the sale had been directed, only for the purposes of the trust (referring to an illegal trust), why did he direct any more to be sold than was necessary ?"

This language is strikingly pertinent to the present case. The

fund in question was certainly provided, in part, with a view to a division of it between the Boards of Education and Missions, hereinbefore designated. If the said fund had been provided, originally, only for the payment of the $3500, why did not the testator say, that that sum was only to be raised?

It is furthermore insisted, that if the said sum of $3500 does not legally pass to the American Colonization Society, but, as to that society, is a void bequest, then it falls into the balance, which is given to the two boards, as residuary legatees of a special fund. The testator, after giving $3500 out of a particular fund, proceeds: "The balance undisposed of, I direct to be legally divided," &c.

It has already been seen, that by the will, the lands out of which, in part, said legacies are to be paid, were converted into personalty; and it is well established, that as to personal property, a residuary clause not only carries all not disposed of, but everything that in the event turns out not to be disposed of. 3 Iredell Ch. Rep. 427; 1 Richardson's Eq. Rep. 465; 4 Hawks. 215; 5 Pickering, 528; 3 How. Miss. 337.

In 2 S. & M. 60, this principle is thus stated: "The general residuary legatee is entitled to take whatever may, by lapse, invalid disposition, or other casualty, fall into the residue, after the date of the will."

Now, whilst, in this case, there is no general residuary legatee of the whole estate, there are general residuary legatees of the whole of a particular fund, and to this state of the case the above-stated principle fully applies.

In view of the foregoing principles, the trust created by the fifth paragraph of the testator's will should be sustained. His widow having renounced the will, the testator's whole estate, real and personal, not otherwise disposed of, should be kept together, so long as either his widow or mother may live, and be managed with a view to its improvement; and out of the proceeds, his mother should be supported as directed; $100 per annum be paid to the ruling elders of the Water Valley Church; and then, if there are means to do it with, slaves having wives or husbands, belonging to his estate, should be purchased, if it could be done at reasonable prices, with a view to keeping families together; and any surplus, after this, unexpended, should go to increase the cash capital of the estate.

In all of this there is nothing contrary to law, or to the policy of the State. But should it even be held, that the slaves directed to be purchased, are for emancipation contrary to law, then it is submitted, that the said trust should be executed, with the exception of this part of it. This is a matter easily separated from all of the other purposes of the trust, and this separation should be made, if necessary. Should this part of the trust be held void, the effect will be, that the funds which its execution would absorb will fall into and swell the residuum; and in this way, the legatees of that residuum will be greatly benefited. See 9 Smedes & Mar. 280.

*H. W. Walter*, for appellees.

We submit the following points for appellee: —

1st. The devise of the slaves is void, and they go to the heir. Hutch. 539; *Lusk* v. *Lewis*, Opinion Book G, 398; *Ross* v. *Vertner*, 5 How. 359; *Bynum* v. *Bostick*, 4 Dessau. 266; *Stephens* v. *Ely*, 1 Dev. Eq. R. 493.

Our statute declares all devises "for the purpose of emancipation," to be void. To ascertain this "purpose," we must look to the whole will, to the particular trust, and to the character of the devisee. The court can look to the early history of the Colonization Society, before its incorporation; to its then avowed object of emancipation; to the geographical location of its members; to the erroneous opinion, then so prevalent everywhere, that slavery was an evil, and "only evil continually," to ascertain the object of its existence then. Its incorporation did not change its policy, but gave strength and concentration to its operations. Under it, the theatre of its action has embraced the greater portion of two continents, and its acts, its aims, and its purposes, have become part of the world's history. The charter of its creation contemplates nothing but colonization, and its powers and capacities are to be exercised only to effect this object. Its general powers, even its special powers, like all other corporations, must be restricted by the nature and object of its institution. *Beaty* v. *Lessee of Knowles*, 4 Peter's R. 152; Angel & Ames on Corporations, 66, 67, 200, 201; 5 Conn. R. 560; 3 Barn. & Ald. 11; 15 John. R. 383. Applying this general rule to it, it could neither hold or sell slaves

devised to it. It would be compelled to emancipate and colonize them. The means it is permitted to use, are given solely for this end. It can take and hold slaves for no other purpose; and should it, by purchase or devise, become the owner of a slave, none could doubt, looking to its charter and its general powers, and overlooking its early history, and the object of its original formation, but that slave could compel it to emancipate and colonize him.

What, too, did the testator "purpose," in making this devise? Was he ignorant of the history and acts of this society? The whole structure and devises of his will forbid this idea, whilst they show him to have been a man of intelligence, and great goodness of heart. This devise was made solely for the purpose of emancipation and colonization. The whole will, this particular trust, and the character of the devisee, show this too plainly to admit of any doubt. We have said, that the whole will shows great goodness of heart. This is specially manifest in the provision he has made for his aged and infirm slaves. These he does not devise to the society, as their colonization would be an injury rather than a blessing. The idea, that he intended the society to hold in slavery, or to sell those devised to them, cannot for a moment be tolerated. If he intended them to remain in servitude, why devise them to a society far distant, whose first aim would be to remove them to a new home, and break up all their early associations and connections. This idea is forbidden in the humanity of the testator, manifested throughout his whole will. Did he intend them to be sold? He directs his executors, his wife, and his two friends, to sell his real and personal property—his horses and cattle, objects for which he could have no peculiar love, but gives to strangers far distant from him, his slaves — for sale? certainly not, as his humanity would induce him, were this his object, to intrust that sale to his wife and friend, who would consult these slaves, the objects of his affection, as to their wishes for new homes and new masters. If he contemplated their sale, and that the proceeds should go to the society, why not intrust that sale to those who were authorized to sell his dumb brutes? No — this was not his object. It would stultify and debase him. He had heard and read of this society — knew its history, the object of its creation; and emancipation and colonization were his objects.

We ask a moment's reference to our legislation, and judicial history. In 1822, emancipation was forbidden, unless by will or deed for meritorious services, and these instruments to be approved by the legislature. Then comes the case of *Brazilee*, 2 How., which decided, that the carrying slaves out of the State, emancipating them there, and bringing them back, was a fraud on the law, and void. Then come *Vertner* v. *Ross*, 5 How., deciding that slaves might be directed to be carried out of the State, and emancipated; and directly after came the Act of 1842, to correct this decision, declaring all devises of slaves for the purpose of emancipation, and all devises requiring them to be removed for the purpose of emancipation elsewhere, to be void. Looking to all these considerations, this court, in a well and ably considered opinion in this very case, held the devise in this will to be void. We can well point to that decision, approve its arguments, applaud its conclusions, and say *stare decisis*. We should not have urged the above arguments, but that this court is now asked to review and reverse that decision.

2d. ·The money devise to the Colonization Society is invalid.

1. Because it is so dependent on the devise of the slaves, that it cannot be separated from it; and the devise itself is against public policy. *Greves* v. *Case*, 1 Jarman on Wills, 204–5; *Grieves* v. *Case*, 2 Cox's Cases, 301; *Same case*, 4 Brown's Ch. R. 67; *Attorney-General* v. *Whitchurch*, 3 Ves. 141; *Morice* v. *Bishop of Durham*, 10 Ib. 521; Williams on Ex'rs, 2 Amer. Ed. 784–785; *Attorney-General* v. *Hinxman*, 2 Jac. & Walk. 270.

2. It can only take effect after the trust estate in the slaves is to vest; and as the latter is void, the former never can be effectual. *Lusk* v. *Lewis*, before cited; *Booth* v. *Booth*, 4 Ves. 399; 2 Wms. Exrs. 887–892.

3d. The devise to the Bible and Mission Societies, may not be contrary to either law or public policy, but it cannot take effect.

1. Because too dependent on the void devises.

1st. The devise of the slaves is void.

2d. The devise of the $3500 is void.

3d. The devise of the real estate is void.

The land is to be sold, to pay the $3500, and to buy other slaves, to be emancipated. These devises, having failed, being against public policy (the end being forbidden), the means to accomplish it,

are also void, and the land goes to the heirs.    1 Jarman on Wills, 205, 502; *Hawley* v. *James,* 5 Paige, 308; S. C. 7 Paige, 213; *Wright* v. *Methodist Church,* 1 Hoff. Ch. R. 2d Ed. 202; *Wheeldale* v. *Partridge,* 5 Ves. Perkins's Ed. 397, and authorities there cited; *Mahorner* v. *Hooe,* 9 S. & M. R. 247.

There is no equitable conversion of the land into money.   Equity looks only to those things as done, which ought to be done.    2 Story Eq. sec. 792.   If the sale is to be made for a special purpose, or a general one, and these fail, there is no conversion.  1 Jarman on Wills, 523–4, 556; 1 Dev. Eq. R. 310; 2 Story Eq., sec. 1214; 1 Hoff. Ch. 219.

The whole of the primary dispositions have failed, and those which are secondary, and dependent on them, must also fail.   If the foundation is removed, the building must fall.   In this case, every primary devise has failed, and this residuary one, dependent on it, must also fail.  In the case of *Mahorner* v. *Hooe,* 9 S. & M. 280, the court said : " On this principle, if the testator had directed his lands in Mississippi to be sold, and the proceeds applied to the transportation of the Mississippi slaves, the court here might interpose in favor of the heir." But in that case, the lands were ordered to be sold, in part for a good, and part for a bad primary devise, and the court held, that the part which was good would support the residuary bequest.   The devise was, to sell the property for two objects,—one, to carry off the Mississippi slaves, which was void, the other, to remove the Virginia slaves, which was valid.   The court held, that both devises being primary, and the latter one being good, that it supported the residuum.   If both had been bad, then the residuary devise, having nothing to rest on, would have failed.   In the case at bar, the residuary clause depends wholly on primary devises, that are void.   Two pillars support a house; one may be removed, and the house stand, but strike both away, and it must fall.   There were two supports in the Mahorner case : one was removed, and the fabric stood; but in this case, all are removed, and it falls.   One arch may support the tottering bridge, where its fellow has fallen, but when both are removed, the structure must fall.

We insist, therefore, as the devise of the slaves, of the $3500, and of the land, is void, they being the special primary devises,

that support the residuary devise, that the said residuary devise is void also. The whole foundation is struck from under it, and it must fall.

But again: this residuary devise can only take effect after the trust in the slaves vests, and after the $3500 is paid; and, as neither one of these things can ever be consummated, the residuary legacy never can be paid. *Lusk* v. *Lewis*, before cited.

4th. If, however, we are mistaken, in the position that the devise to the Bible and Mission societies is invalid, then we insist, that they cannot take the $3500, left to the Colonization Society, for the reason—

1. That it is a devise against public policy, and, as such, it is a resulting trust to the heir. *Baker* v. *Hall*, 12 Ves. 497; 1 Jarman on Wills, 302, 308, 556, 562, and authorities; *Henderson* v. *Wilson*, 1 Dev. Eq. R. 309; *Amphlett* v. *Park*, 2 Russ. & Mylne, 221; 13 Cond. Eng. Ch. R. 6; 3 Burr, 1618; 1 Dev. & Bat. 115–16; 2 Desau. 138.

We insist further, in this point of the case, that the residuary clause in the will, does not comprehend a general residue, and the testator did not intend that the $3500 should fall into the special residuum. See above authorities, and also the case of *Murray* v. *Nesbit*, 5 Ves. 149; *Lucky* v. *Dykes*, 2 S. & M. 60.

But it is said, that the property must remain in the possession of the executor, and that no distribution can take place. In reference to the slaves, there cannot be a doubt as to the fallacy of this position. The statute (Hutch. 539) declares, that when slaves are devised for the purpose of emancipation, "they shall descend to, and be distributed amongst, the heirs-at-law of the testator, in the same manner as if such testator had died intestate." Mr. Lusk, therefore, made no will, as to his slaves, and, as to them, is intestate. His will, as amended by the statute, would read thus: "I give all my property, except my slaves, to my executor, in trust for the following objects," &c. &c.

This is, literally, the reading of this will under this statute; and the statute declares that the slaves shall be distributed after twelve months. This very statute declares, that they shall be distributed. There is no evading it. It is immaterial what the object of the legislature was in this enactment; but it may, without doing vio-

lence to any principle of right, be placed on this ground, viz. : punishment to the testator for making a will contrary to law and public policy. In this view, it is immaterial how long, and for what purpose, the testator required the slaves to remain in the hands of the executor. The law says : " You had an illegal object in view, in thus requiring them to be holden ;" and it declares that, as a penalty, it will distribute the property "in the same manner as if the testator had died intestate." Here is the stern mandate of the law, and it cannot be said that the slaves shall be holden by the executor for the life of the wife or mother of testator. The law is not so written. But we may well say further, that the wife has refused to take under the will, and the mother, who is also the distributee, claims that the life-estate, and the remainder, shall merge. The law says it shall be done, and from its command there is no appeal.

But we insist, that the whole personalty shall be distributed. Why should the executor hold it ? The wife or the mother have declined taking under the will. The elders of the Water Valley Church came into open court and assented to the distribution ; the devise of the slaves is a nullity ; the devise of the land must fail ; the devise of the proceeds of the crop for the purpose of raising money to buy slaves and to pay the $3500 is a nullity. Every object of the testator has failed. Why then keep this property together ? That the fund of the Bible or Mission societies may be increased ? The testator limited their devise to the " balance" of the money after satisfying the void devises. This was all he intended they should have, and more they cannot get in any event. They were not the general residuary legatees of his estate, but were restricted, to say the least, to the balance of a sum of money to be left after satisfying primary legacies, which have wholly failed. Having wholly failed, we say that there is nothing to support them, and that they wholly and entirely fail. The truth is this : the will of the testator has failed in every particular. No one is willing to receive his bounty, at least no one who could take, is willing so to do, and those who were to receive the refuse, who were named only to prevent intestacy, are claiming all.

The case of *Weathersby* v. *Weathersby*, and others like it, hold, that where there is a devise coupled with a condition subsequent

which was void, the devisee took absolutely. In this case, we insist that the *cestui que trust* cannot take. It is not by our law,—its object being to emancipate, and colonize,—permitted to take. But we submit this view, which we regard as unanswerable. The decision of Weathersby carries out the policy of the State prohibiting emancipation; but, by supporting this will, you aid emancipation, and violate the public policy of the State.

*E. C. Walthall,* on same side,
Cited 1 Greenl. Ev. § 290; 1 Phil. Ev. 532, and note; 13 Johns. 518; 1 Paige, 270; 1 Yerger, 296.

HANDY, J., delivered the opinion of the court.

This was a petition for distribution of the estate of the appellant's testator, filed by the appellee in the Court of Probates of Yallobusha county.

The allegations of the petition necessary to be taken into view, are, in substance, that Robert Lusk died in that county, in the year 1855, leaving a widow, and the petitioner, his mother, the only parties entitled to distribution of his estate; that before his death, he made and published his last will and testament, which had been admitted to probate in that court, and which contains the following clauses: "*Fifth.* Should I depart this life, leaving my wife or mother, or either of them, surviving me, I direct that my whole estate, real and personal, not otherwise disposed of, be kept together, so long as either my wife or mother shall live, and managed with a view to its improvement; and that out of the proceeds thereof, my wife and mother, and the survivor of them, be bountifully supported, supplied in all their reasonable wants, and made comfortable in every respect; when this is done, out of the surplus proceeds of my estate, I direct that so long as my wife and mother, or either of them shall live, one hundred dollars be annually paid to the ruling elders of the Water Valley Church, to be by them used and appropriated in paying the salary of the minister at the time supplying the Water Valley Church pulpit. The surplus proceeds of my estate remaining after these charges shall have been met, or so much thereof as may be necessary, I direct to be used in the purchase of any slaves who may have wives or husbands

belonging to my estate, it being my.object, in this way, to keep families together : on this subject, my executors are to exercise a discretion, as it is not my wish that exorbitant prices should be paid.

" *Sixth.* I direct that provision be made out of my estate, for the comfortable support of any of my slaves who may be superannuated, who, from any cause, would be likely to prove a burden to those who might have them on their hands.

" *Seventh.* At the death of my wife and mother, should they not both die in my lifetime, or at the time of my death, should I survive them, I give and bequeath in fee simple, to John H. B. Latrobe, Rev. Wm. McLean, and W. W. Seaton, Esq., in trust for the American Colonization Society, all the slaves belonging to my estate, except such as it may be necessary to have supported in pursuance of the sixth clause of this will.

" *Eighth.* All the property, both real and personal, which may belong to my estate, exclusive of slaves, at the time when the foregoing bequest to Latrobe, McLean, and Seaton, in trust for the American Colonization Society, is to take effect, I direct shall be sold on a credit of one year, for sums of one hundred dollars and less, and of one, two and three years, for sums over one hundred dollars, with interest from the date, purchasers giving bond, with not less than two good securities — the purchasers to have the option of paying cash, if they choose, at the time of sale, or of paying said bonds at any time before they fall due : the proceeds of what may be thus sold, and all funds not otherwise disposed of, belonging to my estate, I will and bequeath as follows : —

" To John H. B. Latrobe, Rev. Wm. McLean, and W. W. Seaton, Esq., I give and bequeath, in trust for the American Colonization Society, the sum of three thousand five hundred dollars, to be paid as soon as practicable after the foregoing bequest of slaves to them in trust, shall take effect. The balance undisposed of, I direct to be equally divided between the Board of Education, and the Board of Domestic Missions, of the Old School Presbyterian Church in the United States," &c.

The petition states, that the widow renounced the will, and upon petition to the court, was allowed one-half of the personal estate as her share thereof, and her dower in the real estate ; and that the

residue remains in the possession of the administrator, consisting of slaves, and other personalty. It alleges, that the bequest of the slaves, in trust for the Colonization Society, is a secret trust for emancipation, and is therefore illegal and void; and prays distribution to the petitioner of her share of the estate.

The trustees of the Colonization Society answer, denying the allegation of the secret trust for emancipation, and claim the right to the Society to hold the slaves, under the power granted in its charter, " to receive any sum or sums of money, goods, or chattels, that shall be bargained, sold or bequeathed to them in any manner," and "to occupy, sell and dispose of their property, as they shall determine to be most conducive to the objects for which it was instituted."

The administrator answered, submitting the question of distribution to the court, admitting that he had the slaves and other personal estate in his hands, and stating that there were debts, which it would require a sale of some of the personal estate to pay.

A decree was thereupon made, reciting that the ruling elders of the Water Valley Church appeared in court, and declined to resist the prayer of the petition, and ordering distribution to the petitioner, of the slaves in the hands of the administrator, upon her executing a refunding bond.

From this decree, the administrator has prosecuted this appeal.

The first, and most important question urged upon our consideration is, the validity of the bequest of the slaves to Latrobe, and others, in trust for the American Colonization Society; and it is insisted, that that society has the power, under its charter, to hold, sell and dispose of slaves absolutely as such; and, as there is no evidence that this bequest was made upon an express trust that the slaves should be emancipated, the general powers of the society authorize the holding of them as absolute property; and hence, that there is nothing in the bequest in contravention of our laws and public policy. This question was argued and submitted for our determination, on a former occasion, in behalf of the parties interested; and upon mature consideration, we were of opinion, that the holding of slaves, not for the purpose of emancipation, is irreconcilable with the policy and true spirit of the society, and hence that this bequest was not valid. *Lusk* v. *Lewis et al.* 32 Miss.

297.   The question was there submitted for decision by consent of the parties in interest, and now urging it again; and according to established doctrine, that decision is conclusive of the question between these parties.   It is as binding upon the trustees for the Colonization Society, as a decision in this case could be; for they do not prosecute this appeal, and are not parties to it, their interest being only set up here through the administrator, and in the same manner in which it was presented for consideration in the former case.

But we are satisfied, upon further consideration, that the view there taken of the power of the Colonization Society, in relation to the subject-matter of this bequest, is correct.

Secondly.  It is insisted, that the bequest of $3500, to the trustees for the Colonization Society, is valid, whether that of the slaves be legal or not; because the pecuniary bequest is independent of that of the slaves, and is, therefore, free from legal objection.

When this point was presented in the previous case, it was held, that the pecuniary bequest was dependent upon the bequest of the slaves taking effect, and was intended to be in furtherance of the emancipation of the slaves.   The correctness of that view appears to be clear, from the language of the will.

The sum of money bequeathed to the trustees for the society, is expressly directed, " to be paid as soon as practicable *after the foregoing bequest of slaves to them in trust shall take effect.*"   The contingency upon which they should be entitled to receive the money, is thus distinctly stated.   And the purpose for which it was to be paid, may be fairly inferred from the circumstances.   The bequest of the slaves was not to take effect, until the death of the testator's wife and mother, and the money bequeathed was not to be paid, until the bequest of the slaves took effect.   What connection could there be between the two bequests, and why was the money withheld until the bequest of the slaves took effect?   The answer is found in the circumstances of the case, and in the nature of the business in which the Colonization Society was engaged,— the removal of emancipated slaves from this country.   It would require money to emancipate the slaves, and have them transported from this country, and it was doubtless for this purpose that this pecu-

niary bequest was made. Otherwise, there was no connection between the bequest of the slaves, and that of the money, and there could be no reason why the payment of the money, should depend upon the bequest of the slaves taking effect.

But, whatever may have been the purpose of the testator, it is manifest, that he made the payment of the money to *depend* upon the bequest of the slaves taking effect; and as that was void, and cannot take effect, the pecuniary bequest must fail, because the contingency, upon which it was to be paid, can never arise.

Thirdly. Another question has been argued, and, though it is not necessarily involved in the consideration of the case, as it is now presented, it is submitted, in order that the legal operation of the will may be determined. This has reference to the interest the Board of Education, and the Board of Missions, have in the bequest for their benefit, in the eighth ·clause of the will; and upon that, two questions are raised,—1st. Whether the bequest, in favor of these boards, fails, in consequence of the invalidity and failure of the bequests for the benefit of the Colonization Society; and 2d. If not, what interest these boards take, in consequence of the failure of the bequests for the benefit of the Colonization Society, in the proceeds of the sale of the testator's personal and real estate, except slaves, directed to be sold, and the proceeds applied to the use of the Colonization Society, to the amount of $3500, and "*the balance undisposed of*, to be equally divided" between these boards.

1. Upon the first point, it is insisted, in behalf of the appellee, that the bequest must fail, because the primary object of the sale of the property, directed by the eighth clause of the will, was to pay the bequest of $3500, for the benefit of the Colonization Society; and, as that has failed, the bequest for the benefit of these boards, which is dependent upon it, must also fail. If the latter bequest appeared to be connected with, and dependent upon, the former, this position would be correct. But it does not appear that the payment of the bequest to the Colonization Society, was an object of greater desire to the testator, than the bequest to the Board of Education and the Board of Missions; nor does it appear, that the latter bequest was in anywise connected with the former,

or dependent upon it.   The provision is simply, that' the sum of $3500, shall be first paid, for the benefit of the Colonization Society, out of the proceeds of the sale of the property directed to be sold, and that "the balance undisposed of," should be equally divided between these boards.   Nor was the sale directed to be made when the bequest of the slaves should take effect.   Doubtless, the payment of the pecuniary bequest to the Colonization Society was an important consideration with the testator, in directing his property to be sold; but it was certainly not his sole object; and the failure of a part of his purpose, cannot defeat the bequest in favor of other parties, involving no violation of law, and not dependent upon the invalid bequests, in its execution.

2. As to the amount which these boards take, under the bequest for their benefit, in consequence of the failure of the pecuniary bequest to the Colonization Society, it is insisted that the bequest of $3500, being illegal and void, is a resulting trust to the heir.

It is to be observed, that the land, directed by the will to be sold, for the payment of the bequests specified, is thereby converted into personalty.   The provision is, that all his property, both real and personal, except slaves, be sold; and *the proceeds* thereof, and "*all funds, not otherwise disposed of, belonging to his estate*," are bequeathed as follows : $3500, to be paid to the trustees of the Colonization Society, and "*the balance undisposed of*," to be divided equally between these boards.

According to the view we have taken of the subject, the bequest for the benefit of the Colonization Society, is an invalid disposition; and it is clear, by the terms of the will, that the Board of Education and the Board of Missions are the residuary legatees of the entire estate, not disposed of, except the slaves, which were not to be sold.   The rule is incontrovertible, that the residuary legatee takes whatever by lapse, invalid disposition, or other casualty, falls into the residuum.   *Vick* v. *McDaniel*, 3 How. 337; *Luckey* v. *Dykes*, 2 S. & M. 60.   The result of this rule is not controlled by the use of the word "balance," in this case, as showing that these boards were to take the residue, after deducting from the fund the specified sum of $3500; for the operation of the rule, is to give to the board all of the fund which was not left to the Colonization Society.   "The limitations of a particular bequest,

and those of the residue, may be quite incongruous, and yet what is not disposed of, will fall into the residue. Here express intention, in favor of either heir or residuary legatee, is out of the question; yet the courts refuse the bequest to the heir, on the ground, that it is contrary to the express will of the testator, to support those he intended to disinherit, as to that bequest. It is, therefore, thrown into the residue. And this rule will not be made to yield to the probability that the testator would have given the illegal and void legacy to others." *Vick* v. *McDaniel.*

It is clear, therefore, that these boards take the amount of the invalid bequest of $3500, to the Colonization Society.

The slaves of the testator, which w,ere the subject of the decree and distribution in this case, were expressly reserved from sale by the will, and could not, therefore, take the course directed by the eighth clause of the will, as to the destination of the general assets of the estate, not disposed of. But, the particular disposition made of them by the will, being illegal and void, these slaves were subject to distribution, as assets of the estate, in due course of law, both by force of the Statute of 1842, in relation to illegal emancipations, and under the general rules of law applicable to the circumstances of the case, and the provisions of the will.

Let the judgment be affirmed.