Ruffin', C. J.
 

 The Court had considered this cause, and was prepared to pronounce a decision, and assign the reasons for it, when an application was made on the part of the plaintiff for a further argument. As it is the course of the Court of Equity not to conclude parties on one hearing, the leave must be granted. Yet, as the second argument is in the nature of a rehearing, it is considered proper that some note of the opinions of the Court, on tho points involved, should be communicated to the counsel; as well to prevent any speculation on the idea that the law on these points is deemed doubtful, as to direct attention to the questions for argument.
 

 The Court is clearly of opinion, that it was competent to the Legislature to enact, that an ^administrator should, after a reasonable time, pay an unclaimed surplus of the estate to any person charged by law with the keeping and securing the same, for the benefit of the creditors and next of kin. The duty of secuiing the estates of dead men, is a political trust of high obligation: and the disposition of the surplus in such a case is simply an act in the course of administration, and subject to legislative regulation. The administrator hath no right to retáin it to his own use. He got his office and the possession of the assets from public authority, and he must execute the office, and account for the property, and deposit if, under the direction of the law. Therefore, the plaintiff would be entitled to a decree, if the act of 1850, c. 62, had not made it the duty of the defendant to make the payment to the Literary Board, instead of the Trustees of the University, under the previous act of 1809.
 

 The Court is further of opinion, that the act mentioned-is constitutional.
 

 The same reasons, on which the trustees micht be au-
 
 *263
 
 thorised to take the surplus from an administrator, require a power in the Legislature to change the person from time to time, with whom it shall be deposited, as it may be deemed more safe for those having a beneficial interest in it. Accordingly, the payment has been required to be made, at one time, to the wardens of the poor : at another, to the public treasurer: then to the trustees of the University: and, lastly, to the Literary Board. In this par. ticuiar duty, then, the trustees were discharging a political agency, in subjection, necessarily, to ihe legislative discretion : and any incidental advantage from the possession of the assets or even ultimate permanent propert)’, cannot change the nature of the office, even
 
 it the
 
 corporation might be regarded as private.
 

 But the Court is further of opinion, that the'University is a public institution and body politic, and, hence, subject to legislative control. It is admitted, and the Court is prepared to hold, that charters of corporations, founded
 
 by-individuals,
 
 on their own funds, either for their own emolument, or for the purposes of education, or other general charity, are contracts of inviolable obligation. The admission and exclusion of members, the qualification of directors or trustees, the mode of keeping up their succession, and the government of such corporations, are absolutely fixed by the charter, and can only be modified by the concurring will of the Legislature and the corporations. The property of such a corporation, also, is as secure as that of the individual citizen. But the University was founded by the State, on the public funds, and for a general public charity. In both senses of the term
 
 “
 
 foundation ” — that of
 
 fundatio incipiens,
 
 and of
 
 fundatio perficiens
 
 — the State is the founder of the college. The trustees were not of private appointment or designation : nor had they a faculty oí keeping up the succession, of themselves : and no person in particular derived any exclusive advantage
 
 *264
 
 from the corporation. But, on the contrary, the election of trustees has ever been by the Legislature, and their number more or less at different periods, as directed for the time being, by the Legislature. There is no power, but their own sense of the public interest, and their representative responsibility, which can' coerce the members of the Legislature to keep up the succession by elections to fill vacancies as they may occur: and therefore the corporation was not only originally the creature of the Legislature, but it is absolutely dependent on its will for its continuing existence1 Hence, it seems to the Court, that there cannot be an instance of a corporation more exclusively founded by the public, more completely the creature of public policy, for public purposes purely, than the University of North Carolina. It is as much so as those other public functionaries, the President and Directors of the Literary-Board, and the Board of Public Works. It is true, that» since the incorporation, there may have been donations to the college: but that would not alter the nature of the foundation, nor the character of the corporation.
 
 It is
 
 merely a political agent — an instrument of State; and if follows, that its organization, devotion and government: its power of acquiring property: and the disposition of the property belonging to it — at all events, so far as it is of public endowment — are subjects for legislative regulation. Hence, the Court concludes, that the act of 1850 is constitutional, and, accordingly, that the Literary Board, and not the University, is entitled to receive the fund in the defendant’s hands,
 

 Per Curiam. Declared accordingly.