Lusk *v.* Lewis et al.

---

## MARTHA LUSK *v.* T. A. LEWIS, Adm'r, et al.

1. PROBATE COURT: JURISDICTION OF, TO SET ASIDE PROBATE OF WILL FOR ILLEGALITY OF BEQUESTS.—The Probate Court has no jurisdiction to entertain a petition filed by the heir, to set aside the probate of a will, on the ground of the illegality of some of the bequests therein made, and to re-admit it to probate, so far as the bequests are legal; in a proceeding of that sort, the court has no right to construe the contents of the will.

2. SLAVES: AMERICAN COLONIZATION SOCIETY.—The object and policy of the American Colonization Society, incorporated by the legislature of Maryland in 1836, is, to promote the emancipation of slaves in the United States, and to colonize them in Africa, and is inconsistent with the growth and permanency of slavery in the Union.

3. CORPORATION: CONSTRUCTION OF CHARTER: COLONIZATION SOCIETY.—General words, in an Act of Incorporation, must receive such a construction as is consistent with the general and obvious policy of the society, as indicated by its charter, and will not be held to confer a right, or vest a power not necessary or usual in the course of its business; and hence the general clause in the charter of the American Colonization Society, empowering them " to receive and hold by gift, bequest, or purchase, any species of 'chattel,' and to sell and dispose of the same as they shall deem most conducive to colonizing in Africa, free negroes and mulattoes, residing in the United States," does not confer the right to hold slaves for any other purpose than for emancipation and colonization.

4. SLAVES: BEQUEST OF, FOR EMANCIPATION, VOID.—A bequest of slaves to trustees, "in trust for the American Colonization Society," in view of the obvious object and policy of the society, and its incapacity to hold slaves for any other purpose than for emancipation and colonization, must be held to have been made for that purpose and no other, and is prohibited by the law of this State, and void. See Hutch. Code, 539, § 11.

5. TRUSTS: VOID: WHO TAKES.—If the trust created by a will be declared ineffectual, as against public policy, and the will sufficiently show the intention that the devisee should be trustee merely, without any beneficial interest in the bequest, the trust in the property will revert to the heir, and not to the trustee. 6 Ves. 52; 10 Ib. 521; 1 Eden. 508; 4 Dessaus. 266; 1 Dev. Eq. Rep. 493; 1 Dev. & Batt. Law R. 260; 2 Hawks, 120.

6. SAME.—A bequest of slaves to certain persons, who are strangers to, and have

no claim on, the testator's bounty, "in trust for the American Colonization Society," conveys no beneficial interest in the slaves to the trustees, and the trust being void, the slaves will go to the heir, both by the general principles of equity and by the provisions of the statute of this State. Hutch. Code, 539, § 11.

7. WILL: CONDITIONAL LEGACY.—The bequest of a pecuniary legacy, to be paid after another bequest, made by the will, shall take effect, will not be payable if the latter be illegal and ineffectual.

8. CASES CITED.—The case of *Weathersby* v. *Weathersby*, 13 S. & M. 685, cited and explained; and the case of *Read* v. *Manning*, 30 Miss. R. 308, cited and confirmed.

APPEAL from the Probate Court of ——— county.

*E. C. Walthall*, for appellant,

Contended, First: That as the petition charged and the demurrer admitted, that the slaves were bequeathed to Seaton et al. in secret trust, for the purposes of emancipation, the bequest was void by the statute, Hutch. Code, 539, § 11. Second. That the trust being void, the slaves would go to the heirs, and not to the trustees. See Code before cited, and 1 Jarman on Wills, 457, §§ 503, 504; 2 Story, Eq. Jur. §§ 1245, 1246; 2 Madd. Chancery, 112; 1 Ves. & B. 272; *Read* v. *Manning*, 30 Miss. R. 308. He also commented on the case of *Weathersby* v. *Weathersby*, 13 S. & M. 685, and contended that it was not law, unless it be considered that the testator, in that case, intended to give a beneficial interest in the slaves to his son, (the trustee,) which was clearly not intended here.

*H. T. Garnett*, for appellees,

Argued, First: That the will did not express for what purpose the slaves were bequeathed to the society, and that as the society had express power by its charter, to hold any species of chattel, (which included slaves,) for sale, that it would not be presumed, in the absence of any expression in the will to that effect, that the testator intended to make an illegal bequest. That on the contrary, the presumption of law is always in favor of the legality of contracts, and of bequests in wills; and they are always sustained,

when, by any construction which can reasonably be given to them, they appear to be legal. Second. That conceding the trust to be void, yet the petitioners are not entitled. In such a case, the devisee would take. *Weathersby* v. *Weathersby*, 13 S. & M. 685; *Ross* v. *Vertner*, 5 How. 305; *Wade* v. *Colonization Society*, 7 S. & M. 663.

HANDY, J., delivered the opinion of the court.

This was a petition filed by the appellant in the Probate Court, 'for the purpose of setting aside the probate of the last will and testament of Robert Lusk, deceased, made in that court at a previous term.

The ground of the application was that, among other bequests in the will, the testator gave all his slaves " to John H. B. Latrobe, Rev. William M'Lean, and W. W. Seaton, in trust for the American Colonization Society;" and also the sum of three thousand five hundred dollars, to be paid after the bequest of the slaves should take effect; that the bequest of the slaves was made in secret trust for emancipation, contrary to the laws and policy of this State, and was, therefore, void; and that the pecuniary bequest being dependent thereon, was also ineffectual. And the object of the petition was to have a re-probate of the will, declaring it invalid as to these bequests, and valid in other respects.

The appellees, the administrator with the will annexed, and the trustees in whose behalf the contested bequests were made, appeared and filed a demurrer to the petition, which was sustained and the petition dismissed; from which decree this appeal is taken.

It is clear that the Probate Court was incompetent to grant the objects of the petition. These were, to have the probate of the will, as a whole, set aside, and to have it re-admitted to probate and established as a valid will only as to part of the bequests made in it—in other words, to declare the legal effect and validity of the bequests of the will. The court was asked, in effect, to determine the rights of the parties claiming under the will, and not merely to determine whether it was an instrument made and published under such circumstances and with such legal forms, as to consti-

tute it the last will and testament of the testator, and to entitle it to probate as such.

In the first place, the court had no power to set aside the probate made at a previous term, for anything set forth in this petition. But had such power existed, it obviously had no jurisdiction to declare that a will which was executed with all due legal solemnities, was insufficient to pass title to parties to whom bequests were made in it. That was a question of construction of the contents of the will, and not of the sufficiency of its execution and publication. The latter being established, it was not for that court to say whether any title passed to the parties claiming under its provisions.

For this reason, the court acted properly in sustaining the demurrer, and we might stop with a mere affirmance of the decree. But the question of the validity of the bequests to the trustees for the Colonization Society is raised by the petition, and is discussed here by counsel on both sides, and we are requested to consider and determine the question in order to settle the rights of the parties, and to prevent further litigation. And we will, therefore, proceed to examine the reasons for and against the validity of the bequests.

By the Act of 1842, Hutch. Dig. 539, § 11, any bequest of slaves for the purpose of emancipation, or in order to be removed from this State for the purpose of emancipation elsewhere, is made unlawful; and it is insisted in behalf of the appellant, that the bequests in this case fall within the prohibitions of this statute. This must be true, if the bequests are to be considered as made for the purpose of emancipation; and this is the first subject of inquiry.

The provision of the seventh article of the will is this : "I give and bequeath in fee simple, to John H. B. Latrobe, Rev. William M'Lean, and W. W. Seaton, Esq., in trust for the American Colonization Society, all the slaves belonging to my estate," &c.

It appears by the record, that the American Colonization Society was incorporated by act of the legislature of the State of Maryland in the year 1836, for the purpose of colonizing free people of color residing in the United States, with their own consent, in Africa ;

Lusk *v.* Lewis et al.

authority was conferred to acquire lands, tenements, and hereditaments, by gift, bargain, sale, devise, or otherwise, and "to receive any sum or sums of money, goods or chattels, that shall be given, sold, or bequeathed to them in any manner whatsoever," and "to occupy, use, and enjoy, or sell, transfer or otherwise dispose of, according to the by-laws, &c., * * * all such lands, tenements, and hereditaments, money, goods or chattels, as they shall determine to be most conducive to the colonizing, with their own consent, in Africa, of the free people of color residing in the United States, and for no other uses or purposes whatsoever;" and it is declared that for this object all property of any kind shall be vested in the society.

The question, then, arises, had the Colonization Society the power under this charter, to hold the slaves as absolute property, with the right to dispose of them by sale or otherwise as chattels.

It is true that the charter confers the power to receive *any chattels* given or bequeathed to them, and to use, *sell, and dispose of the same,* and that this language would in general embrace slaves. But this power must be viewed with reference to the objects of the society, and such a construction given to the words as will not be incompatible with those objects.

It is not to be doubted that the policy on which the society was established contemplated the removal not only of such free persons of color as were in the United States at the time of its incorporation, but also of such slaves as might in future be emancipated. This policy afforded an opportunity to such persons as owned slaves and desired to emancipate them to do so, without being subject to the evils of an increase of the free colored population in the country ; and hence the establishment of the society had a tendency to encourage emancipation, if indeed that was not an object within the especial contemplation of the institution. Its operation was calculated strongly to promote emancipation, and it may, therefore, be regarded as founded on a principle not consistent with the growth and permanency of the institution of slavery ; for it cannot be supposed that an effect so obvious was not intended as a part of the system.

Such being the principle of its foundation and the tendency of

its operation, it is manifest that the holding of slaves, as chattels, with the power of selling them as such, would be directly repugnant to the policy of the institution and subversive of one of the objects which it was designed to accomplish.    Such a power is too inconsistent with the general policy of the institution to be derived from general words in the charter, which under different circumstances would give the right.˙    The general words must be referred to the purposes of the incorporation, and will only give power to do such things and to acquire such rights as are necessary and usual in the course of its business to enable it to attain the object for which it was created, and none other.    It is not shown, nor are we able to perceive how the holding of slaves or chattels by the society, with the absolute power of sale or other disposition of them, could be necessary or usual in the business of colonizing free persons of color ; and it is most manifest that the testator never intended to give any such right in this case.

We are, therefore, of opinion, that the society had not power under the term " *chattel*," in their charter, to hold slaves as they are held and recognized under our laws, and hence that the bequests involved in this case cannot be supported on the ground that an absolute estate in the slaves referred to in the will, passed to the society.    And, considering the policy and objects of the institution, we think that the society must be regarded as having no further title or interest in them than for the purpose of emancipation and colonization, and that the bequests of the will were made for that purpose.    This comes within the prohibition of our Statute of 1842, and the bequests must, therefore, be declared illegal and void.  ·        ˈ

The pecuniary bequest to the trustees for the benefit of the Colonization Society, in express terms, is to be paid after the bequest of the slaves should take effect.    The payment of the money is dependent upon the bequest of the slaves taking effect, and was plainly intended to be in furtherance of the emancipation intended in consequence of the bequest of the slaves.    That bequest having failed, it follows that the pecuniary bequest must fail with it.

But it is insisted, that if the bequest was void as creating a trust for the use of the Colonization Society, the trust only is void, and

the trustees will take in their individual capacity absolved of the trust.

We do not consider this position tenable under the circumstances of this case.

It is apparent from the whole scope of the will, that the testator intended to repose a mere trust in the persons named in the clauses of his will in question. They appear to have been mere strangers, to whom he could have been under no obligation or desire to make a bequest of his property for their personal benefit, and who, upon no principle of equity, had any claim upon his estate, or can be presumed to have been the objects of his bounty as individuals. There may be cases in which estates conveyed subject to a condition which is void, vest absolutely in the grantee. But the rule appears to be now well established in England, that if the will sufficiently shows the intention that the devisees should be trustees merely, and the trust declared be ineffectual as against the policy of the law, there will be a resulting trust to the heir. *Mackelston* v. *Brown*, 6 Ves. 52-66; *Morrice* v. *Bishop of Durham*, 10 Ib. 521-535; *Boron* v. *Statham*, 1 Edw. 508-516, and note at the end of the case. The same rule has been sanctioned in this country; and it has been held that a bequest of slaves in trust to secure their freedom, contrary to law, being void, the next of kin will take, or there will be a resulting trust to the testator or donor, or his executor. *Bynum* v. *Boswick*, 4 Dessaus. 266; *Stevens* v. *Ely*, 1 Dev. Eq. R. 493; *White* v. *White*, 1 Dev. & Batt. (Law) 260; *Huckaby* v. *Jones*, 2 Hawks, 120.

The reasons upon which this rule is founded, appear to us to be sound and just, especially in their application to wills; and are in aid of the cardinal rule in such cases, that the real intention of the testator should be ascertained, and when it is apparent, that technical words should not be allowed to defeat it. But it would be in violation of the first principles applicable to the construction of wills, to hold that, where the direct bequest, as expressed in the will, could not be carried into effect, an estate should pass clearly not intended by the testator, and in opposition alike to the express disposition of the will, and the dictates of natural justice.

The case of *Weathersby* v. *Weathersby*, 13 S. & M. 685, is urged

Lusk *v.* Lewis et al.

in support of the individual claim of the trustees in this case. That was a bequest, by a father, of slaves to his son, *in trust* and *upon condition,* that the slaves should be maintained as free persons. It was treated as an estate upon condition subsequent; and the condition being void, the estate was held to be absolute in the legatee.

It is possible that the circumstances of that case might be regarded as showing some benefit intended to be conferred upon the son by the bequest, and that it was not a case of mere trust, beyond which the trustee was not intended to have any interest. So regarded, the decision may stand upon sound principle; but it cannot be extended further. In that view, it is not an authority to support the claim of the trustees in this case, whose whole interest in the property manifestly appears to be that only of trustees for the execution of the benevolent purposes of the testator.

But the trustees are not entitled to hold the slaves for another reason.

The Act of 1842, prohibiting bequests like this, in effect makes the entire bequest void, and places the slaves, so bequeathed, in the same condition as if the testator had died intestate. The provision is, that such slaves "shall descend to, and be distributed amongst the heirs-at-law of the testator, or be otherwise disposed of according to law, in the same manner as if such testator had died intestate." We have held this provision to be applicable to wills of this character made after the passage of the act. *Read* v. *Manning,* 30 Miss. R. 308; and under its operation, the bequests under consideration can have no effect whatever to vest title in any one; and the property embraced in them must take the same course as if the will had never been made.

Upon the ground first stated, the demurrer to the petition was properly sustained, and the decree must be affirmed.