## S. W. BARTON *et al. v.* RICHARD M. KING *et al.*

1. LAST WILL AND TESTAMENT: EFFECT OF A GENERAL RESIDUARY CLAUSE: HEIR AND RESIDUARY LEGATEE.—In a will of personalty, a general residuary bequest carries not only everything not disposed of, but everything that is ill-disposed of, or that, by lapse or any other casualty, may fall into the residuum; while in a devise of realty, a general residuary clause only carries real estate which is not disposed of, nor attempted to be disposed of, specifically by the devise.
2. STATUTES: OBJECT OF STATUTE, REV. CODE, 302, DECLARING DEVISES AND BEQUESTS TO RELIGIOUS SOCIETIES VOID.—The object of the statute, Rev. Code, 302–3, declaring devises and bequests to religious societies void, was to prevent the evils resulting as well from the efforts to accumulate vast estates in the hands of the church, as from the accomplishment of such an object, and had no reference to the power of testamentary disposition.
3. LAST WILL AND TESTAMENT: DISTRIBUTION OF PROPERTY BEQUEATHED TO A RELIGIOUS SOCIETY.—A bequest of personal property to a religious society is void by virtue of the statute, Rev. Code, 303, and the distributees take the same as though no such testamentary disposition had been made, if the property is not otherwise disposed of by the will.

Barton et al. *v.* King et al.

4. *Read* v. *Manning*, 30 Miss. R. 308; *Lusk* v. *Lewis*, 32 Miss. R. 297; *Lewis* v. *Lush*, 35 Miss. R. 401; *Garnett, Administrator*, v. *Cowles*, 39 Miss. R. 60, cited and explained.

ERROR to Probate Court of Monroe county. Hon. Thomas H. Davis, judge.

*R. Davis, Houston & Reynolds* for plaintiffs in error.

*Sale & Phelan* for defendants in error.

HARRIS, J., delivered the opinion of the court.

The record shows that William B. Barton died in 1862, without children, leaving his wife Martha, who had since intermarried with Richard M. King, and appellants, his brothers and sisters, his heirs-at-law. That by his will he bequeathed a considerable portion of his estate to certain religious and charitable associations, and "the balance after the payment of his just debts he gave to his wife."

The bequests to the religious and charitable associations, in the year 1863, in a proceeding before the Probate Court of Monroe county, were adjudged and decreed to be null and void, which decree remains in full force.

At the October term, 1865, of the Probate Court of Monroe county, the appellants filed their petition in said Probate Court, praying for a distribution of the amount of said special bequests, so decreed to be null and void, among the appellants. To this petition appellees demurred. The demurrer was sustained and petition dismissed, and the cause is now before this court on appeal from that judgment.

The only question presented is, whether arts. 55 & 56, p. 302-3 of the Rev. Code of this State, have made any change in the common law rule; that in a will of personalty a general residuary bequest carries not only everything not disposed of, but everything that is ill-disposed of, or that by lapse, or any other casualty, may fall into the residuum; while in a devise of realty, a general residuary clause only carries the real estate which is not disposed of, nor attempted to be disposed of, specifically by the devise.

19

It is insisted, on behalf of appellants, that the statute of this State above referred to, declaring that devises or bequests in favor of religious corporations, societies, denominations or associations, etc., shall be null and void, and that the *heirs-at-law or the distributees* shall take the same as though no testamentary disposition had been made, changes the common law rule, so as to defeat not only the illegal testamentary disposition, but also the legal operation and effect of the residuary clause at common law, and vests the void devise or bequest in the heirs-at-law or distributees.

Such was certainly not the intention of arts. 55 and 56 of the Code. This whole section concerning "religious societies or congregations," was designed simply to prevent the evils resulting, as well from the *efforts* to accumulate vast estates in the hands of the church as from the *accomplishment* of such an object, and had no reference to the power of testamentary disposition.

Mr. Tucker, in his Commentaries on the Statute of Uses and of Trusts, vol. i. p. 32, says: "In the early times of the English monarchy, that nation, like every European power, bowing to the supremacy of the Pope, and having an ecclesiastical establishment entirely under his control, the influence of the clergy through the realm became unbounded and irresistible. To this their own learning and ability in no small degree, but the bigotry and ignorance of the people in a much greater, contributed. Among their most prominent vices were rapacity and luxury, '*pessima ac diversa inter se mala;*' and even their sanctity, where it was most real, looked upon acquisitions to the property of the church, by whatever means extorted from the people, as justified by the holy object they had in view. Impelled, therefore, by the various motives of sustaining the luxuries of monks and priests, or adding to the splendor of the service of the church, they accumulated vast estates in these clerical hands; availing themselves of superstitious weakness, and imbecile piety, to get what they could from humble penitents while they lived, and hovering around their death-beds like vultures and vampires, to defraud the unhappy heir of the patrimony of his forefathers."

It was, doubtless, against the possible recurrence of the state of things here alluded to, and its injurious effects upon· the purity of the church, as well· as public virtue generally, that the act in question was directed. But in the absence of any evidence of such intention, we cannot suppose that it was meant by these provisions of the Code to impose any further limitation upon the great right of testamentary disposition, or to defeat the *lawful* dispositions of a testator's will by way of punishment for their attempted violation beyond what is there plainly expressed. It was not designed to destroy the will, but to give effect to all its valid dispositions ; and in the event that the illegal dispositions were not otherwise disposed of (as by a residuary clause), then that the heirs-at-law or distributees should take the same, as though no testamentary disposition had been made.

We are referred to the cases of *Reid* v. *Manning*, 30 Miss. 308; *Lusk* v. *Lewis*, 32 Miss. 297; and *Lewis*, administrator, v. *Lusk*, 35 Miss. 401, cases arising under a statute of this State prohibiting the emancipation of slaves by will, and providing that, in case of such devise or bequest, " the same shall descend to and be distributed amongst the heirs-at-law, in the same manner as if such testator had died intestate," etc. And it is insisted that these cases sanction the construction here contended for by counsel for appellants.

But in the case of *Garnett*, administrator, v. *Cowles and Wife*, decided at February term, 1860, and not yet reported (p. 60 of 29 Miss.), this point underwent direct adjudication, and these cases are there reviewed, and it is held that the residuary legatee takes in preference to the heir.

Let the decree of the Probate Court be affirmed.