## Anderson *v.* Gift *et al.*

(Division A.   March 10, 1930.   Suggestion of Error Overruled March 17, 1930.)

[126 So. 656.   No. 28462.]

**Conn & Conn,** of Corinth, for appellant.

W. C. Sweat, of Corinth, for appellees.

Argued orally by **W. D. Conn,** for appellant, and by **W. C. Sweat,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

John M. Gift and a great number of others filed their bill in the chancery court of Alcorn county as the next of kin and heirs at law of J. E. Gift, deceased, against F. F. Anderson, as trustee. The bill alleged that the said decedent died, leaving no children or descendants of children, no wife, no father or mother, no brother or sister, no uncle or aunt, surviving him, and that his next of kin were his first cousins and the descendants of said first cousins. The bill averred that J. E. Gift departed this life seized and possessed of a considerable estate, both real and personal, and specifically described certain lands as belonging to the decedent. The bill further alleged that the decedent, before his death, executed a last will and testament which has been admitted to probate on record; that by the terms of the will he had made specific bequests of cash to the amount of nineteen thousand five hundred dollars, and twenty shares of bank stock in trust for the upkeep of the Henry Cemetery, and made certain bequests of jewelry.; and that he attempted to devise and bequeath all the rest of his estate to J. L. Holly and F. F. Anderson, as trustees, without

bond, authorizing them to sell all of his real and personal property, and directing them to use the money arising from the sale for educational purposes in Alcorn county, outside of certain municipalities.

The bill alleged that the attempted devise of real estate was void being in violation of section 269 of the Constitution, and 3578 of Hemingway's 1927 Code, and asserted that the court should declare the will void as to real property so attempted to be devised, and that same should be canceled and removed as a cloud from the title of the heirs at law named in the bill as such. It averred that Holly had died, and that Anderson had acted as trustee and was in full and complete charge of the decedent's estate. It was further charged that the personal property was sufficient to pay all debts, specific legacies, and costs of the administration; that the land belonged to them and should be sold for a division. The prayer was for a cancellation of that part of the will which sought to devise the lands, and for an order directing the sale of the lands for partition. There were amendments to the original bill, bringing in certain other parties.

Anderson filed his answer, admitting the death of Gift; admitting that he owned the real estate described in the original bill; and then set up that the decedent had executed certain mortgages on certain parts of the land which had been foreclosed by the trustee subsequently to the filing of the bill, and before the answer was filed. The total amount of the sales of real estate, in order to pay debts, was twenty-three thousand five hundred dollars, the decedent having executed various trust deeds to secure the payment of the debts to the beneficiaries therein. The answer set up a codicil to the will, in which the decedent specifically bequeathed to Miss Doyle D. Williams a registered United States Fourth Liberty loan bond of the face value of fifty thousand dollars. The answer further asserted that the respondent did not know whether the devise of the lands

violated the mortmain statute embraced in section 269 of the Constitution or not. Anderson admitted that he was in full charge of the estate; that the personal property belonging to the estate was sufficient to pay the specific bequests, also the general pecuniary bequests, to pay all debts and expenses of the last illness and cost of administration.

The respondent denied that the heirs at law were the legal and equitable owners of the real estate, and denied that he should be required to pay the debts entirely from the personal estate, and said that a certain lot, due to the sale under the deed of trust, was the only land left belonging to the estate. The answer further averred that the decedent, by his will, disposed of his entire estate without providing a fund for the payment of debts, or pecuniary legacies, and that, if he is intestate as to any of his property, it is the fund derived from the sale of real estate devised for the benefit of rural public schools of Alcorn county. The answer alleged that by the terms of the will there was a conversion of real estate, and, having died intestate as to the real estate, debts, costs, and legacies not specifically provided for, should first be paid from the proceeds of the sale of real estate. Anderson asserted that it was necessary to have a construction of the will, and prayed therefor; and, in the prayer, asked that the court determine whether or not there was an equitable conversion of the land into personalty, so as to render it undevised personalty, subject to the payments of debts and general pecuniary legacies ahead of devised personalty; and, generally, as to whether or not the land should be subjected to the payment of debts, thus making his answer a cross-bill.

The complainants filed their answer to the cross-bill, by which answer the question to be determined by the court was whether or not the lands, by the terms of the will, were subject to the payment of debts and legacies, in preference to personal property. Attached as an ex-

hibit, and offered in evidence, was the will, and codicil thereto, of J. E. Gift, the decedent.

The will is set forth verbatim:

"I, J. E. Gift, a citizen and resident of the city of Corinth, in Alcorn county, Mississippi, being of sound and disposing mind and memory, do make, publish and declare this my last will and testament, hereby specifically revoking any and all wills or codicils heretofore made by me.

"It is my will that at my death all of my just debts be paid by my trustees, hereinafter named and mentioned.

"I hereby will and bequeath to E. F. Waits five thousand ($5,000) dollars, to be delivered to him immediately upon my death.

"I hereby will and bequeath to Miss Katherine Waits, the daughter of E. F. Waits and Mary Waits, five thousand ($5,000) dollars, to be paid to her immediately upon my death.

"I hereby will and bequeath to Evan W. Parker, 407 Middle street, Dayton, Ohio, five thousand ($5,000) dollars, to be paid to him immediately upon my death.

"I do hereby will and bequeath to Miss Elizabeth Kennedy one thousand ($1,000) dollars, to be paid to her immediately upon my death. This provision is made in appreciation of the love and affection this little lady has always shown me.

"I do hereby will and bequeath to J. L. Holley, F. F. Anderson, R. H. Price, R. B. Moore, Elwyn Price, W. M. Yearwood, Lillie B. Word, Ima Lovelace and Frank Hardin, and to each of them, the sum of five hundred ($500) dollars, which said sum is to be paid to each of them immediately upon my death, out of any funds on hand. These bequests are made in consideration and appreciation of their faithfulness as employees of the Corinth Bank & Trust Company, and of the respect they have uniformly shown me.

"I do hereby devise and bequeath to the Henry Cemetery of Corinth, Mississippi, a corporation, twenty (20) shares of the capital stock of the Corinth Bank & Trust Company, which said stock is to be held by my trustees, as hereinafter named, in trust for the said Henry Cemetery, the dividends accruing or received from the said stock to be used towards the maintenance of the said cemetery, the said stock is not to be turned over or delivered up to the said Henry Cemetery, but only the dividends accruing thereon from year to year; and I do hereby authorize and direct my said trustees to turn over and pay to the said Henry Cemetery the said dividends, the same to be used, as above stated, for the maintenance of said cemetery, so long as the said Henry. Cemetery is maintained where it now is located.

"I do hereby devise and bequeath to Miss Katherine Waits the two large diamonds now in a ring, and the gold K. W. watch that belonged to Mrs. Gift.

"I do hereby devise and bequeath to my friend H. M. Stone my three-stoned diamond ring.

"I do hereby devise and bequeath to E. F. Waits my gold chronograph watch.

"I do hereby designate and appoint J. L. Holley and F. F. Anderson as, and to act as, trustees, under this my last will and testament, and I do hereby give, devise and bequeath unto them, as such trustees, in trust, all of my property, real and personal, wherever located or situated, not hereinabove specifically devised or bequeathed, to be held in trust and disposed of by them for the following purposes and none other, that is to say:

"I do hereby direct, empower, and authorize my said trustees to sell any and all of my property, real and personal, that has not hereinbefore been specifically willed, or that may hereafter come into my estate from any source whatever, and convert the same into money, whenever and in whatever manner the judgment of my said trustees may dictate is for the best interests of my es-

tate; and I do hereby give them the power to make deeds to realty and transfer and deliver personal property as fully and completely as I myself could now convey or transfer it; with the power also in said trustees to lend the fund, or any part thereof, on security satisfactory to them, wherever he may see proper for the best interests of my estate.

"I further direct that my said trustees shall use the fund arising from the sale of the said property and all other funds coming into their hands belonging to my estate, which have not been herein specifically devised or bequeathed, for educational purposes in Alcorn county, Mississippi; but I hereby direct that no part of my estate shall be expended for such purposes within the City of Corinth or the Town of Rienzi, or the Town of Kossuth, it being my desire and direction that said funds be used to educational purposes outside of the said three municipalities and within said county; and I would suggest that they use the same largely in building new school buildings in the rural districts of the said county. It is the purpose of this clause of my will to confer on my said trustees the power to use the funds that come into their hands, not otherwise herein specifically devised and bequeathed for the upbuilding of the educational interests in said county and outside of said municipalities; and I do commit the disposition and distribution of this fund to the sound discretion and judgment of my said trustees as to how they shall best expend said fund in advancement and promotion of the cause of education in said territory.

"It is my wish and I do hereby direct that my said trustees shall receive reasonable compensation for the services they may render, and to this end do direct that the board of directors of the Corinth Bank & Trust Company shall be the sole and final judges of the amount of compensation my said trustees shall receive for the same —assuming that the board of directors will undertake to act in this behalf for all concerned. I do also empower

my said trustees, if they should see proper and think best, to employ some other competent person to help them in looking after the property coming into their hands under this my last will and testament, which may need any special attention, and to rent or collect the rents from realty; and they, the said trustees, may pay for such services such compensation as by them may be deemed proper and fair in the premises.

"I do further direct that my trustees shall file with the said board of directors, immediately after my death, or as soon thereafter as may be conveniently done, a full and complete list or inventory of all property coming into their hands, as such trustees; and this requirement is made so that the said board of directors may have at all times a complete list of all property belonging to my estate. And while I have herein after dispensed with the necessity of my trustees making any sort of accounts to any courts, I do hereby direct that my said trustees shall make or state accounts of their handling of my estate to the board of directors of said Corinth Bank & Trust Company whenever requested by them so to do, and so often as they may request them.

"It is my desire that the said J. L. Holley and F. F. Anderson be joint trustees and that they act jointly and agree upon the handling of all matters that may be required of them; and in event of the death of either of them, then I do hereby name and designate the one surviving as the sole trustee; and in the event the said J. L. Holley and F. F. Anderson should both be unable either from death or otherwise to exercise and execute this trust as trustees, then I do hereby direct that the board of directors of the Corinth Bank & Trust Company, shall appoint and name two other trustees in their stead; it being my intention and direction that there always be two trustees, and whenever necessary, I direct that the said board of directors name and appoint any successor or successors, the said board of directors being hereby authorized to appoint such trustees for a period of time

to be fixed by said board, or at the will of said board; and any and all of said successors shall have the same powers and duties and privileges under the same conditions as I hereby specifically confer on the said J. L. Holley and F. F. Anderson.

"I do hereby specifically direct that my said trustees shall never be required to make annual accounts to any court, and do hereby dispense with the inventory and appraisal of my estate to any court, and I do further hereby dispense with inventory and appraisal of my estate to any court; and I do further hereby relieve the said J. L. Holley and the said F. F. Anderson from giving any bond as such trustees, aforesaid; but I do direct that the board of directors of the Corinth Bank & Trust Company require their successor, or successors, to give sufficient bond to be approved by the said board, both as to amount and sufficiency; unless the said Corinth Bank & Trust Company itself may think best to act as said trustee as successor to the above two named parties—and in that event I do specifically direct that the said bank be not required to give any bond as such trustee.

"It is my wish that the said board of directors of the Corinth Bank & Trust Company of Corinth, Miss., fix the compensation of any and all parties who may act as trustee under this my last will and testament; and whenever herein the board of directors of Corinth Bank & Trust Company is requested to act, then it is meant that a majority of the said board may act for the said board of directors of Corinth Bank & Trust Company.

"The foregoing four (4) pages with this the fifth page of typewritten matter is on this the 1st day of June, 1923, signed, published and declared by the undersigned, J. E. Gift, as his last will and testament.

"J. E. GIFT.

"Signed, published and declared by the above-named J. E. Gift as his last will and testament, in our presence; and we, in his presence and in the presence of each other,

at his request, do hereby sign our names as attesting witnesses, on this the 1st day of June, 1923.

"J. K. Jones

"B. F. Worsham.

"Filed December 28, 1927

"W. L. Madden, Chancery Clerk."

The codicil is here set forth:

"Corinth, Miss., Oct. 28, 1927.

—"J. L. Holley, Corinth, Miss.

"Dear Sir: Realizing the uncertainty of life and the certainty of death, I hereby request that in case of my sudden death from natural or unnatural causes that in winding up my estate that you transfer to Miss Doyle D. Williams one fifty thousand dollar Fourth Liberty Loan bond registered in my name, this is to be considered as much of a bequest as if mentioned in my will and it is intended that in case of my death from causes stated above that this is to become a codicil to my will.

"Witness my hand at Corinth, Miss., this Oct. 28, 1927.

"[Signed.] J. E. Gift.

"Witness: J. L. Holley

"F. F. Anderson."

The testator died December 11, 1927. The above will was executed by him on June 1, 1927, and after his death was duly probated. The trustees named in the will proceeded to execute the trust in all respects as though they had been by the will appointed executors, or had been appointed administrators by the court, with the will annexed. Thereafter Holley died, and Anderson continued to execute the trust, paying the legacies and most of the debts; and after the bill in this case was filed certain lands were sold under deeds of trust.

The evidence shows that the testator's real and personal estate amounted to about one hundred and ninety-one thousand dollars, his personal estate being in excess of one hundred and forty thousand dollars. His residence, not included in the deed of trust, was valued at about twenty-five thousand dollars.

It is stated in the briefs that the testator was illegitimate, and on the date of the execution of the will had no heirs at law; subsequent to the execution of the will, under chapter 162 of the Laws of 1924, collateral kin were permitted to inherit.

The court below decreed that, in so far as the will attempted to devise his real estate to trustees, to be sold by them, the proceeds to be devoted to educational purposes, it was void; and further decreed that on the death of the testator his lands descended to his heirs at law as though no testamentary disposition had been made; and that the lands having been sold by the trustees for the deed of trust debts for the sum of twenty-three thousand, two hundred and fifty dollars—a fair price—the heirs at law should recover that amount of and from the trustees. The court also decreed that the residence, the house, and lot, descended to the heirs at law, freed from the payment of debts and legacies; and ordered that same should be sold for division of the proceeds among the heirs.

The court found, as a fact, that there was ample personal property to pay off and discharge all indebtedness, secured and unsecured, and all the legacies under the will, together with all expenses of administration.

An appeal was granted to settle the principles of the case.

Appellant's contention is best stated in his own language: "And finally we concede that if the assets of a partially intestate decedent's estate are to be applied to the payment of his debts in the order required in either a case of testacy or intestacy, and if there was no equitable conversion by the will of the realty into personalty, then the decision of the lower court was right and ought to be affirmed."

Appellant further concedes that in cases of testacy and intestacy all personal property belonging to the estate must be exhausted in the payment of debts before

any of the realty could be resorted to, unless the court should decree that the best interests of the heirs at law would be conserved by the sale of the land, in preference to the sale of the personalty; and further concedes that, in case of testacy, pecuniary legacies are not chargeable upon the devised lands of the decedent, unless the testator, either expressly or by implication, made the payment of such legacies a charge upon his real estate.

It is conceded that the effort of the testator to devise his land in trust, to be sold by the trustees, and the proceeds devoted to educational purposes in Alcorn county, is void, being in violation of section 269 of the Constitution of 1890, section 5090, Code of 1906, section 3578 of Hemingway's Code of 1927.

It is indisputably clear that the provision of the will seeking to devote the proceeds of the sale of land to educational purposes violates section 269 of our Constitution, commonly known as the Mortmain Statute. Under the provisions of this section the lands of the testator descend to his heirs at law in the same manner and to the same extent, and subject to the same burdens as would have been the case had such lands not been included in the will. See section 269 of the Constitution of 1890; Blackbourn v. Tucker, 72 Miss. 735, 17 So. 737; Greely v. Houston, 148 Miss. 799, 114 So. 740. The will should be construed in the light of our Constitution, as though it had included in its terms, and made reference to, personal property only.

In a nutshell, appellant's contention is that the foregoing will, by implication, primarily charged the lands with the payment of debts, because the terms of the will commingled in the trust estate the real and personal property; and that, while the trust cannot be executed, yet an equitable conversion is created by the terms of the will, by which all the real estate became personalty; and, being so commingled, the real estate must first be exhausted, before recourse can be had to the personal estate. He

further construes the trust clause to be a general, and not a residuary, legacy. The testator, after providing that the trustee should pay his debts, and that certain money legacies to various parties should be paid to them immediately upon his death, and certain specific legacies of jewelry, and, by a codicil, a specific legacy of a bond, devised and bequeathed unto the trustees as follows:

"All of my property, real and personal, wherever located or situated, not hereinabove specifically devised or bequeathed, to be held in trust and disposed of by them for the following purposes and none other, that is to say:

"I do hereby direct, empower and authorize my said trustees to sell any and all of my property, real and personal, that has not hereinbefore been specifically willed," etc.

If counsel is mistaken in his view that this clause creates a general legacy on a parity with the legacies of money, then the case, as presented by him, and the many authorities devoted to the question of charging intestate real estate with debts and legacies to the exoneration of personal property bequeathed by the terms of the will, must fail and fall of its own weight, provided the theory of equitable conversion is likewise unsound.

We think, on the question of the character of legacy conveyed to the trustees for educational purposes, the devise of land being void and the bequest of personalty valid, that it seems clear—almost beyond argument—that this bequest constitutes the residuum, that it is a residuary legacy; and, this being the case, it is not controverted that the residuum should be charged with the payment of debts, after payment of all the other bequests, to the exoneration of the real estate of which the decedent died seized and possessed, and as to which he died intestate. In 28 R. C. L., section 272, p. 296, we quote the following with reference to residuary legacies: "The residue of an estate may be defined as that which remains after discharging all legal and testamentary

claims on the estate or as that which is left after the payment of charges, debts, and particular legacies. While no particular form of words is requisite to constitute a residuary legatee, it must appear to have been the intention of the testator that the residuary legatee should take the residue of the estate after payment of debts, and meeting all the appointments of the will.''

In this case the first item of the will provides that the trustees shall pay his debts; and then that they shall pay the several general legacies, in the language of the clause here under consideration: ''Of all of my property, real and personal . . . not hereinabove specifically devised or bequeathed.'' And again: ''All of my property, real and personal, that has not hereinbefore been specifically willed.'' So we are bound to take the view that this will undertakes to transfer only personal property, and it is quite clear that this clause is a residuum.

Section 2056, Code of 1906, section 1796, Hemingway's Code of 1927, clearly charges personal property primarily with the payment of debts, and there has not been cited to us a decision of this court to the contrary. The trustees were directed to pay debts, and no other than personal property was bequeathed to them with which to pay debts. It is therefore clear that the intention of this testator—there being sufficient funds with which to pay all debts and legacies—was to pay in full the general and specific legacies, and to charge the residuum with the payment of the debts and costs. No other reasonable implication can be drawn from the terms of this will. The testator expected these legacies to be paid from personal property, for he said they should be paid immediately after his death. The testator knew that he had violated section 269 of the Constitution, and he therefore knew that he had made no disposition of his lands in his will— that lands could not be resorted to immediately to pay legacies. The title to personal property vests in the legal representative upon the death of a testator. The title

to the land is in the heir at law in case of intestacy, or in the devisee in case of testacy. The personal property goes to the personal representative for the purpose of paying the debts of the decedent. How, then, ascribing to the testator a knowledge of the law on this subject, can it be said that there was any implication in the terms of this will that he intended to charge lands in order to exonerate personalty from the payment of his debts. There is no difficulty in this case, because it is shown that the debts of the testator, and all his general and specific legacies, and the cost of administration can be paid out of the personal estate, and still there will remain a large amount of money in the residuum, to be paid to the residuary legatees.

The language of our statute, the uniform construction put upon it, together with the terms of the will, show that this residuum should be charged with the payment of debts and expenses of administration, in preference to the general and specific legacies, and to the exoneration of the land, which went to the heirs at law, and, under the terms of this will, cannot be resorted to in any event, unless, and until, the personalty is shown to be insufficient therefor.

It is insisted that by this same section of the will the testator has resorted to equitable conversion, thereby mingling his personal and real estate, so that the proceeds of the real estate should be charged with debts to the exoneration of the residuary legatees. In the case of Greely v. Houston, 148 Miss. 799, 114 So. 740, this exact question was squarely presented to the court; and we held therein that a nonresident decedent could not, by the terms of his will, work a conversion of lands into personalty, by means of directions in the will to sell the land and invest the money in personal property, so as to bequeath it to religious and charitable institutions— a very much stronger case for equitable conversion than is here presented. The question is absolutely set at rest

there. When the purpose of the trust failed, the whole trust failed in this case; and the effort of the testator to commingle his real estate with his personal property was void.

If in the case of Greely v. Houston, supra, equitable conversion had been allowed, under the law of the domicile of the testator, the bequests of the proceeds of the land would have been valid; and although this was pressed to the limit, we declined to follow that view, and we are now bound by that decision.

The purpose of the attempted conversion was that the proceeds of the sale of the land might be devoted to educational uses. When the purpose failed, the conversion failed. The will shows that no other logical view of the language used by the testator therein could be taken. The purpose of the conversion being illegal and void, there was no conversion—the land was eliminated from the will by the illegal direction of the testator as if entirely erased therefrom. See 13 C. J., section 51, page 873; 3 Pom. Eq. Juris. (3 Ed.), section 1166; In re Foster's Appeal, 74 Pa. 391, 15 Am. Rep. 553; Lorillard v. Coster, 5 Paige (N. Y.) 172; Painter v. Painter, 220 Pa. 82, 69 A. 323, 324; 20 L. R. A. (N. S.) 117; Reed's case, 237 Pa. 125, 85 A. 138; Tichenor v. Bank, 96 N. J. Eq. 560, 125 A. 323, 325.

In Foster's Appeal, supra, on this question, Judge SHARSWOOD said: "There must be some purpose recognized as lawful to be accomplished by a conversion before equity will permit it to have place."

In the Lorillard case, supra, Chancellor. WALWORTH said: "Upon the principles of equitable conversion, money directed by the testator to be employed in the purchase of land, or land directed to be sold and turned into money, is, in this court, for all the purposes of the will, considered as that species of property into which it is directed to be converted, so far as the purposes for

which such conversion is directed to be made are legal, and can be carried into effect."

In the Painter case, supra, Judge MESTREZAT said: "While the doctrine of equitable conversion is well settled on principle and reason, and is recognized in numerous cases determined by this court, the sphere or limitation of its application is equally well established, and should be observed. The sole purpose of the doctrine in the case of a will being to effectuate the intention of a testator, it cannot be invoked when his intention fails or is incapable of accomplishment. The reason of the rule then ceases, and the rule itself no longer obtains. This principle is as well settled on reason and authority as the doctrine of equitable conversion itself."

The case of Craig v. Leslie, 3 Wheat. 563, 4 L. Ed. 460, does not militate against the rule here announced, for the reason that the question is settled by Greely v. Houston, supra. We add, however, that in that case there was a conversion of the realty into personalty for the benefit of testator's alien brother. The Virginia law forbade a devise of realty to an alien, but did not prohibit the bequest of personalty. The court simply held that the conversion was for a legal and permissible purpose, and did not operate to circumvent the Virginia statute.

So, likewise, as to the other authorities cited by appellant.

Having reached these conclusions, we do not deem it necessary to discuss the question so earnestly pressed by counsel, that intestate realty will be subject to the payment of debts in exoneration of the particular bequests of personal property to particular individuals.

We conclude that the decree of the court below was correct, no other point being here presented for our consideration.

We conclude that the effort to devise the land to trustees, to be sold by them, and the proceeds thereof to be devoted to purposes of education, is void.

We are further of the opinion that the testator in such case only bequeaths and conveys personal property therein.

We are further of the opinion that the general rule obtains, and is applied to this will, that the testator's debts must be paid primarily out of the personalty of his estate; and it appearing that there is adequate personal property to fully comply with the terms of the will, the land which he owned at the time of his death cannot be resorted to for the payment of debts.

We are of opinion that, in so far as any personal property remaining in the residuum after payment of debts, general and specific legacies, and expenses of administration, is concerned, it passed to the residuary legatees; that the clause creating the trust is a residuary, and not a general, legacy.

We conclude, finally, that this estate should have been handled as though an administration was regularly had, and the executor or administrator, after payment of debts and legacies therein named, had turned over the remainder, if any, to the trustees for educational purposes in Alcorn county.

Under the showing of the condition of the personal estate in this case, the lands descended to the heirs at law, exonerated from all debts and legacies, and can be resorted to only in event that the personalty is insufficient.

Affirmed.