Coleman *et al. v.* Whipple *et al.*

(In Banc. May 26, 1941. Suggestion of Error Overruled July 15, 1941.)

[2 So. (2d) 566. No. 34524.]

288

**Creekmore & Creekmore**, of Jackson, for appellants, University of Miss., Miss. State College, and Miss. State College for Women.

**Geo. H. Ethridge**, Assistant Attorney-General, for appellants, the University of Miss., Miss. State College, and Miss. State College for Women.

**V. D. Rowe** and **H. T. Holmes**, of Winona, and **A. J. Coleman**, of Vaiden, for appellants, the executors.

Ernest Kellner, of Greenville, and D. Allen Penick, of Lexington, Va., for appellees.

**R. C. McBee,** of Greenwood, for appellee, Mrs. Bettie Wilson Thomas.

Argued orally by **H. H. Creekmore, Vernon Rowe** and **Geo. H. Ethridge,** for appellants, and by **Ernest Kellner,** for appellee.

**Alexander, J.,** delivered the opinion of the court.

This suit involves the construction of the will of R. C. Weir, who died on January 29, 1939. After providing in said will for the payment of debts and funeral expenses, the testator provided for three legacies of $10,000 each to cousins, and other bequests direct to charitable and educational organizations, and for the maintenance and support of a legatee who, subsequent to the death of the testator, has died. Such personal bequests were directed to be paid from the proceeds of the sale of real estate if sufficient, otherwise from the residue.

Items Ten and Eleven of the will directed the executors to sell, respectively, all realty and personalty left by the testator. The residue of the estate was, by Item Twelve of the will, bequeathed, in equal parts, to three state educational institutions: The University of Mississippi, Mississippi State College, and the Mississippi State College for Women. The language of these bequests was identical except for the name of the legatees, and is as follows:

"Item Twelve. All the balance, residue and remainder of my estate after payment of expenses of administration thereof, I do hereby give and bequeath as follows:

"(a) Thirty-three and one-third per centum thereof to the University of Mississippi, located at or near Oxford, in Lafayette County, Mississippi, by payment thereof to the Trustees of said University of Mississippi, for use by such Trustees for the benefit and improvement of the educational facilities of said University of Mississippi, as

such trustees, in their wisdom and judgment, may deem proper.''

The testator was not married. The appellees are second cousins of the testator, and the bill was filed by the executors to construe the will and to cancel the claims of appellees to the lands of the testator. The three state institutions joined in the prayer of the bill.

The answer of defendants alleged that they were second cousins and next of kin of the testator; that the purported bequest of the proceeds of the sale of real estate to the three state institutions was void under Section 269 of the Constitution of 1890: denied that the executors had power under the will to sell the real estate, but that such lands passed by descent to defendants as heirs of the testator. Joe Wilson and Ross Wilson, who were not parties to this answer, later adopted same as their own, and joined as cross-complainants. The cross bill renewed the contention that the executors were without power to sell said lands, reasserted the invalidity of the bequests to the colleges, and prayed for confirmation of the title to all lands in cross-complainants, but it was later dismissed by appellees.

The personal estate is alleged to be about $300,000, and the value of the lands is approximately $111,000. The legacies which are not directed to be paid from the proceeds of sales of lands total $65,000. Although there would remain from the personal estate approximately $235,000 which, after payment of all debts and expenses, would properly pass to the colleges as bequests permitted under Section 270 of the Constitution, this circumstance is overshadowed in briefs for the appellees by their attack upon the bequests of proceeds of realty to such colleges as violative of Section 269. This section is as follows: ''Every devise or bequest of lands, tenements, or hereditaments, or any interest therein, of freehold or less than freehold, either present or future, vested or contingent, or of any money directed to be raised by the sale thereof, contained in any last will and testament,

or codicil, or other testamentary writing, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination, or association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void, and the heir at law shall take the same property so devised or bequeathed, as though no testamentary disposition had been made.''

Such section, when stripped to such provisions as are applicable here, would read in substance as follows: ''Every bequest of any money directed to be raised by the sale of lands, to any body politic, in trust, for the purpose of being appropriated to charitable uses shall be void.'' Whether such bequest here is direct to the colleges rather than ''in trust''; or whether its proposed devotion to charitable uses, is sufficient to condemn it without the creation of a formal trust (as existed in Blackbourn v. Tucker, 72 Miss. 735, 747, 17 So. 737; Greely v. Houston, 148 Miss. 799, 114 So. 740, and Anderson v. Gift, 156 Miss. 736, 126 So. 656); or whether the prohibition is against a bequest to a religious organization in trust either for the use of such organization or for the purpose of being appropriated *by it* to charitable purposes (as indicated in Bostick v. Elliott, ms. opinion, Book L., p. 296, not reported), will not be discussed here. Elaborate briefs by the learned counsel have presented their respective contentions with scholarly thoroughness. A decision of these questions is pretermitted by our consideration as to whether Section 269 includes the State within its purview.

The Act of February 28, 1844, by which the University of Mississippi was created, designated certain individuals as trustees and constituted them and their successors as a body politic to be known as ''The University of Mis-

sissippi.'' Such trustees were not such as are defined by the law of trusts. They were the managing board or head of the university, and then and now constitute the University of Mississippi, created by the State through its Legislature which, under its act of creation (Sec. 5) retains the right to repeal the entire act; its property is owned by the State and the university is as an arm of the State, the State itself. State v. Vicksburg & N. R. R. Co., 51 Miss. 361, 365; Oklahoma, etc., College v. Willis, 6 Okla. 593, 52 P. 921, 40 L. R. A. 677; McDonald v. University of Kentucky, 225 Ky. 205, 7 S. W. (2d) 1046; University v. Maultsby, 43 N. C. 257; Trustees of University of Alabama v. Winston, 5 Stew. & P. (Ala.), 17; Dart v. Houston, 22 Ga. 506. The acts creating the colleges now known as Mississippi State College (February 28, 1878) and Mississippi State College for Women (March 12, 1884, Laws 1884, chap. 30) must be similarly construed, and such construction is not at all affected by Chapter 127 of the Laws of 1932, creating a single board of trustees for all the state institutions of higher learning.

We pass, therefore, to the question whether the State, as a legatee, comes within the prohibition of Section 269 of the Constitution and Section 3564, Code 1930. By resorting merely to well-known principles of statutory construction, it is evident that the State may not be restricted in its sovereignty except by the specific provisions of its statutes. Josselyn v. Stone et al., 28 Miss. 753; Turner v. City of Hattiesburg, 98 Miss. 337, 53 So. 681; Feemster v. City of Tupelo, 121 Miss. 733, 83 So. 804; State Teachers' College v. Morris, 165 Miss. 758, 144 So. 374; Sedgwick, Construction of Statutory and Constitutional Law (1874 Ed.), p. 337.

In Josselyn v. Stone, supra, the Court said: ''It is the settled doctrine that the general words of a statute do not include the State, or affect her rights, unless she be specially named, or it be clear and indisputable from the act that it was intended to include the State.'' It

was further held in City of Jackson v. State, 156 Miss. 306, 126 So. 2, 4: "It is undoubtedly the general rule that, where the effect of a statute is to restrict the rights of, or impose liabilities upon, the state or its political subdivisions, it will be held to be inapplicable to them, unless they are included expressly or by necessary implication." See also 59 C. J. 1103, Sec. 653.

Certainly it cannot be held that the State of Mississippi "by necessary implication" restricted its own powers and prerogatives by Section 269 (Code 1930, Sec. 3564). Section 17 of the Constitution forbids the taking of private property for public use "except on due compensation being first made to the owner." This language is clear and unambiguous. Yet it is not to be construed as requiring such prepayment by the State, dependence upon whose public faith and credit being a proper requirement in recognition of its sovereignty. Hinds County et al. v. Johnson et al., 133 Miss. 591, 98 So. 95; State Highway Commission v. Buchanan, 175 Miss. 157, 165 So. 795, 166 So. 537.

Sections 269 and 270 of the Constitution were enacted to prevent the evils and abuses which provoked the early statutes of mortmain. The parallel statutes (Sections 3564, 3565, Code 1930) are entitled "Statutes of mortmain." Although some of the evils thwarted by these statutes have been defined with reference to the disherison of the immediate heirs, the original purpose to prevent the accumulation of lands in mortua manu through grant or devise to religious or ecclesiastical bodies has been generally recognized. Cooley, Blackstone (4 Ed. 1899), p. 649; Bostick v. Elliott, supra; Greely v. Houston, 148 Miss. 799, 806, 114 So. 740; Barton v. King, 41 Miss. 288.

Mortmain Statutes first appeared in the Revised Code of 1857, and were embodied in Chapter 35, Section X, Articles 52-56. This section was entitled "Of Religious Societies or Congregations." The reason why such lands so devised were considered in mortua manu was that such lands, in respect of their availability for governmental

aid or services by taxation or otherwise, were in dead hands. "A corporation being endowed with perpetual succession, to make a grant to it was equivalent to granting it in perpetuity; and because of the incapacity of such artificial persons to do certain acts which caused forfeiture and escheat, and because such land could never contribute its revenue by way of aids, wardships, marriage dues, and the like, land conveyed to a corporation was dead to the crown so far as revenue was concerned." Cooley, Blackstone, op. cit. supra, note 2.

It was early observed that, as the King was the ultimate lord of every fee, he ought not, unless by his own consent, to lose his privilege of escheats and other feudal profits by the vesting of lands in tenants which could never be attainted or die. To this end it was necessary for corporations to have a license in mortmain to enable them to purchase lands. The recognition of the status of the State as the original and ultimate owner, subject to well-known exceptions, of all lands within its borders, is seen in the provisions as to forfeiture and escheat. All lands whose titles are derived from the State are held, generally, subject to its taxing power. Mortmain Statutes were enacted for the protection of the crown which exercised its sovereignty over its lands by keeping them available for its support, or, to view their rationale from the standpoint of the alienee, to prevent their accumulation in hands that were dead insofar as services due the crown were concerned. See The Law Times (1932), vol. 174, p. 7. It would, indeed, be an anomaly to hold that the State, as the original and ultimate owner of all its lands, could be comprehended within the terms of this statute which was enacted for its protection. It should be unnecessary to strengthen this view by reference to the right of the state to acquire any lands of individuals, high or low, or of corporations secular or religious, by expropriation.

Article 54 of Section X, Code of 1857, made forfeiture to the State the penalty for granting lands or interests therein in mortmain. This statute furnishes a significant

transitional link between the old common-law provisions and their establishment as part of our expressed public policy; and their purpose was thus definitely projected into our subsequent enactments. Certainly, since under such section lands so granted were forfeited to the state, there could have been a valid grant direct to the state. So, if under the older statutes there was a forfeiture to the crown of lands devised in mortmain, the public policy or purpose which was crystalized in these statutes did not operate to prevent a valid devise to the crown itself. In the instant case the emphasis is not upon the fact that the purposes are educational and charitable, but upon the status of the legatees. Had these lands been devised direct to appellees, the State would still have remained their ultimate owner and invested with a measure of control and dominion over them. Such dominion is consistent with the inherent rights of the sovereign and the acquired rights of the subject. Had R. C. Weir died intestate and without any legal heirs, all of these lands would have passed to the State by escheat. Does it comport with either logic or public policy that while one's lands may be given to the State by default, a testator may not by solemn and deliberate testamentary act make the State and those whom it serves the object of his bounty? We think not.

We hold that Section 269 of the Constitution (Code 1930, Section 3564) is not applicable to devises or bequests to the State, and that the three State institutions are entitled to share in the residuary estate in conformity with the wishes and purposes of the testator as set out in Item Twelve of his last will and testament.

In view of this conclusion, it is unnecessary to examine whether the identity of the purported heirs other than those mentioned in the will was established, or whether they were properly before the court. Since there is no merit in the contention that the executors are without power to sell the lands for the purpose of paying the specific legacies under Items 2, 3, 4, and 8 to cover any

balance into the residue, other questions raised by the direct and cross-appeals need not be discussed.

Reversed on direct appeal and affirmed on cross-appeal, and remanded.

**Roberds, J.**, took no part in the decision of this case.

**Smith, C. J.**, delivered a dissenting opinion.

One purpose of Section 269 of the Constitution may be to prevent the accumulation of wealth in "dead hands," but a more effective way of accomplishing this purpose would be to simply prohibit religious and charitable institutions from receiving or holding property, within limitations if desired, without reference to the method (will, deed or parol gift) by which property can be transferred from one to another. The main purpose of the section is to limit testamentary capacity, the limitation being directed to testators and not devisees or legatees. Blackbourn v. Tucker, 72 Miss. 735, 17 So. 737, and Greely v. Houston, 148 Miss. 799, 114 So. 740, which override any statement to the contrary, in Barton v. King, 41 Miss. 288, decided prior to the adoption of this section of the Constitution, and on sections of the Code of 1857, "the purpose of the constitution is to prevent one who will not be charitable at his own expense from being so at the expense of his heir at law. One may yet 'sell all that he hath and give to the poor,' but he may not keep his grip on his estate until death relaxes his grasp, and then, at the expense of wife and child, devote it to religious uses." Blackbourn v. Tucker, 72 Miss. 735, 17 So. 739. This being true, the limitation is not on the State's power to receive property but on the power of testators to devise property for the forbidden purposes.

Moreover, devises to the State, in trust, for religious or charitable purposes, are clearly within the mischief intended to be limited by the section, and if the devise

here is valid, the purpose of the section could always have heretofore been and hereafter may be circumvented by the simple device of devising land to the State, in trust, for the benefit of a religious or charitable institution—a device that has not heretofore suggested itself to attorneys called on to draft wills containing devises to religious and charitable institutions, and which, if generally adopted, would render Sections 269 and 270 of the Constitution and the recent amendments thereto of no efficacy whatever. The constitutional purpose cannot be effectually accomplished unless Section 269 thereof applies to devises to the State for religious uses, and consequently to that extent the State is clearly within the section's implications which is sufficient to make it apply thereto.

I am therefore of the opinion that the devises here in question are void, in which I am requested by Justice ANDERSON to say that he concurs.